HENRY C. HOWARD et al., Respondents, v. GEORGE C. MOOT, Appellant.

Rules of evidence are at all times subject to modification and control by the legislature, and changes thus made may be made applicable to existing causes of action.

An act declaring any circumstance or any evidence, however slight, *prima facie* proof of a fact is valid.

Accordingly *held*, that the act to perpetuate certain testimony respecting the title to the Pulteney estate (chap. 19, Laws of 1821), was constitutional and valid.

Also *held*, that the legislature having thereby made the chancellor the final arbiter to determine what would be good *prima facie* evidence of the facts stated, evidence taken in due form, as prescribed by the act, accompanied by the opinion of the chancellor, properly given and certified, to the effect that it was good *prima facie* evidence of the facts stated was, although the evidence was hearsay, competent and conclusive in the absence of any evidence to controvert it.

A will regularly admitted to probate can only be impeached for incapacity of the testator by reason of nonage or imbecility; competency will be presumed until the contrary is shown.

A devise to alien trustees of lands held by an alien under the act of 1798, "to enable aliens to purchase and hold real estate within this State," etc. (chap. 72, Laws of 1798), is valid.

This court will take judicial notice of the fact that the tract of land known as the "Pulteney estate" was ceded by the State of New York to the State of Massachusetts by the treaty and deed of cession executed December 16, 1786, and that under the proper authority, State and national, the Indian title to said lands has been extinguished.

As to whether the fact that the Indian right of occupation of lands within this State had not been extinguished with the sanction of the State government or abandoned by the Indians, can be set up by one without title, as against the owner in fee subject to such rights, *quære.*

All the terms and conditions of the said treaty, upon which depended the right of Massachusetts and her grantees to an absolute and indefeasible estate in the lands granted, *held,* to have been substantially performed.

(Argued February 10, 1876; decided February 22, 1876.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming judgment in favor of plaintiffs, entered upon a verdict. (Reported below 2 Hun, 475; 5 T. & C., 427.)

This was an action of ejectment to recover possession of 100 acres of land in Livingston county, part of the "Pulteney estate" so called.

(For the general history of the title under which plaintiff claimed, see 3 Seld., 305; 41 N. Y., 397.)

Plaintiffs introduced in evidence an exemplification from the Court of Chancery of depositions taken in proceedings under the act to perpetuate testimony respecting the title to the Pulteney estate (chap. 19, Laws of 1821), for the purpose of proving the death of Sir William Pulteney, the descent of the land to his daughter Henrietta Laura Pulteney; also proving her death and the descent of the land to her cousin Sir John Lowther Johnstone, and also proving his death. Accompanying the deposition was an opinion and order of JAMES KENT, chancellor, to the effect "that the said depositions did, in the opinion of the chancellor, furnish good *prima facie* evidence of the facts therein set forth," and ordering that the interrogatories and depositions be filed, etc.

This was objected to by defendant's counsel on the grounds that the alleged facts were not established by the testimony offered; that the legislature had no power to pass a bill authorizing testimony to be taken *de bene esse* without giving an adverse party the right of cross-examination, and that the testimony was mere hearsay, and upon points where hearsay evidence was incompetent. The objections were overruled, and defendant's counsel duly excepted.

An exemplified copy of the will of Sir John Lowther Johnstone devising the lands to trustees on certain trusts, and authorizing them to convey title, was also offered in evidence. This was objected to upon the ground, 1st, that it did not appear that the testator was twenty-one years old when the will was executed; 2d, that by the laws of the State the testator could not devise or convey the land; 3d, that being an alien he could not devise such lands. The objections were overruled, and said counsel duly excepted.

At the close of the evidence defendant's counsel moved for a nonsuit, on the following grounds, among others:

First. That it appeared by the deed of cession that the State of Massachusetts was required to extinguish the Indian title, which they had not done. Second. That it appeared by that deed that the State of Massachusetts might grant the pre-emption of the whole, or any part of the territory so situated, providing that no purchase by the native Indians by any such grant or grants should be valid, unless made in the presence of and approved by the superintendent appointed by the Commonwealth of Massachusetts, which had not been done. Third. That it did not appear that any treaty with the Indians was ever filed in the office of Secretary of State, as required by such deed of cession. Fourth. That it did not appear that any such treaty was ever ratified by the legislature of this State. Fifth. That it did not appear that the legislature of this State ever consented to the making of any such treaty, or that any was made. Sixth. That there was no proof of the confirmation by the State of Massachusetts, as required by the act of cession. * * * Twelfth. That the conveyances proved by the plaintiff did not show a sale, devise or descent within the act of 1798, such act not having any relation whatever to a trust. Thirteenth. That thereby such trusts were void, because contrary to the laws of this State.

The motion for a nonsuit was denied, and the defendant's counsel duly excepted.

The court directed a verdict in favor of the plaintiffs, finding the title to the premises in the plaintiffs, and assessing the plaintiffs' damages, to which ruling and direction the defendant's counsel excepted. The jury rendered a verdict acordingly.

*Scott Lord* for the appellant. The legislature had no power to enact chapter 19, Laws of 1821, and the testimony taken under it was improperly received. (*People* v. *Suprs. Westchester*, 4 Barb., 64; *Benson* v. *Mayor, etc.*, 10 id., 223; *Powers* v. *Bergen*, 6 N. Y., 358; *Hartung* v. *People*, 26 id., 167; *Killam* v. *Killam*, 1 Am. L. Reg. [N. S.], 28, 29;

*Bates* v. *Kimball*, 2 Chip., 89; *Wilkinson* v. *Leland*, 2 Pet., 627; Smith on Stat. and Con. Law, 236, 296, 534, § 372; Sedg. on Stat. and Con. Law, 156–159; *People* v. *Snyder*, 41 N. Y., 397; Const., 1777, §§ 13, 41; R. L., 1813, 47; 1 Greenlf. Ev., 494.) Hearsay evidence of pedigree or of death is only admissible when from great lapse of time, or for other sufficient cause, the law presumes that original or direct evidence is not attainable. (2 Phil. Ev. [4th Am. ed.], 238; 1 id., 194, 197; C. & H. Notes, 612; *Higman* v. *Ridgeway*, 10 East, 120, 129; *Jackson* v. *Browner*, 18 J. R., 39; *Leggett* v. *Boyd*, 3 Wend., 379; *Caujolle* v. *Ferrie*, 26 Barb., 177; 1 Greenlf. Ev., § 124; *Stein* v. *Bowman*, 13 Pet., 220; *Mima Queen* v. *Hepburn*, 7 Cranch, 290; *Jackson* v. *Etz*, 5 Cow., 319; *Fosgate* v. *Her. M. and H. Co.*, 12 Barb., 352, 353, 358; *Duke of C.* v. *Graves*, 9 id., 596.) The objections to the deed from Charles H. Pierpont to the Duke of Cumberland were well taken. (*Thompson* v. *Ketchum*, 8 J. R., 189; *Frances* v. *Ocean Ins. Co.*, 6 Cow., 404, 429; *Lincoln* v. *Battell*, 6 Wend., 475; *Monroe* v. *Douglas*, 5 N. Y., 447.) The Indian title not having been extinguished, plaintiffs proved no right to recover. (*St. Regis Indians* v. *Drum*, 19 J. R., 127; *Goodsell* v. *Jackson*, 20 id., 693; *Lee* v. *Glover*, 8 Cow., 189; *Ogden* v. *Lee*, 6 Hill, 546; 5 Den., 628; *Wadsworth* v. *Buff. H. A.*, 15 Barb., 83; *Strong* v. *Waterman*, 1 Paige, 607; *Blacksmith* v. *Fellows*, 7 N. Y., 401; *People* v. *Dibbell*, 16 id., 203.)

*William Rumsey* for the respondents. The legislature has absolute control of the rules of evidence so far as that it may change the rules of presumption, and the burden of proof. (*Hand* v. *Ballou*, 12 N. Y., 541; *Ogden* v. *Saunders*, 12 Wheat., 213, 262, 349; *People* v. *Mitchell*, 45 Barb., 208; *Hickox* v. *Tallman*, 38 id., 608; *Comm.* v. *Williams*, 6 Gray, 1–5; *Delaplaine* v. *Cook*, 7 Wis., 54.) The depositions taken under chapter 19, Laws of 1821, were proper evidence, and the law was within the power of the legislature. (*Graves* v. *Duke of C.*, 9 Barb., 595; 7 N. Y., 305; *People* v. *Snyder*,

51 Barb., 589; 41 N. Y., 397; Cooley's Const. Lim., 87, 88, 367, 368; Story on Const., § 534; 1 Webster's Laws, 17, art. 41.) The will of Sir John Lowther Johnstone was properly received in evidence. (1 Webster's Laws, 178, 179, §§ 2, 7, 9; 1 R. L., 364, 365, §§ 2, 6, 7, 9.) The deed from Pierpont to the Duke of Cumberland was properly received in evidence. (Laws of 1816, chap. 118, 119; 3 R. S. [1st ed.], app., 36; 3 Seld., 305, 314; 9 Barb., 595; *Hoyt* v. *Martense*, 16 N. Y., 231, 233; *Baker* v. *Lorillard*, 4 id., 257, 261; *Rex* v. *Wheatley*, 2 Burr., 1128; 1 Kent's Com., 475, 476; *Goodell* v. *Jackson*, 20 J. R., 722.) The original oath of allegiance was properly received in evidence. (1 Greenl. Ev., §§ 6, 144; *Ritchie* v. *Putnam*, 13 Wend., 524; *People* v. *Snyder*, 41 N. Y., 397, 403, 409; *Stark* v. *Ches. Ins. Co.*, 7 Cranch, 420; 51 Barb., 589; 2 Greenl. Laws, 99, 452.) The treaty of 1794 confirmed and protected Williamson's title and was properly in evidence. (8 U. S. Stat. at Large, 122, part 9; Const. U. S., art. 6, cl. 2; 1 Greenl. Ev., § 490; *Jackson* v. *Adams*, 7 Wend., 367; *Goodrich* v. *Russell*, 42 N. Y., 177; *Fairfax* v. *Hunter*, 7 Cranch, 603; *Sheaffe* v. *O'Neil*, 1 Mass., 256; *Jackson* v. *Clark*, 3 Wheat., 1; *Munro* v. *Merchant*, 28 N. Y., 9, 34; *Watson* v. *Donelly*, 28 Barb., 653; *Orser* v. *Hoag*, 3 Hill, 79.) The Indians had no title to the land, but merely a right of occupancy without legal title. (3 Kent's Com., 378, 380; *Jackson* v. *Hudson*, 3 J. R., 375; *Fletcher* v. *Peck*, 6 Cranch, 87; *Johnson* v. *McIntosh*, 8 Wheat., 543; *Strong* v. *Waterman*, 11 Paige, 607; *U. S.* v. *Cook*, 19 Wall., 591; 41 N. Y., 397; *Swinnerton* v. *Col. Ins. Co.*, 37 id., 174; *Maghee* v. *C. and A. R. R. Co.*, 45 id., 514, 524; *Bk. of Augusta* v. *Earle*, 13 Pet., 590; 13 Wend., 524.) No statute was needed to enable the devisees of Sir John Lowther Johnstone to take the estate devised to them by his will. (7 Cranch, 603; 2 Kent's Com., 54, note *e.*; *People* v. *Conklin*, 2 Hill, 67; *Mick* v. *Mick*, 10 Wend., 379; *Goodrich* v. *Russell*, 42 N. Y., 177, 181.) The trusts in the will of Sir John Lowther Johnstone are not void as contrary to the laws of this State. (1 R. S., 727, § 48; *Cushney* v. *Henry*, 4 Paige, 345, 352; *Duke of C.*

v. *Graves,* 9 Barb., 595, 606; 7 N. Y., 305.) The deed of disposition of Sir John Lowther Johnstone not being properly exemplified was properly excluded. (2 R. S., 396, 397; 1 id., 759, § 17; Bouv. Inst., §§ 3096–3107; C. & H. Notes, 1244, note 874; *Richmond* v. *Patterson,* 3 Ohio, 368; 1 Greenl. Ev., § 484.)

ALLEN, J. The plaintiffs bring their action to recover the possession of a parcel of land in the county of Livingston, in the possession of the defendant, to which they make title through several mesne conveyances from the State of Massachusetts. The lands in controversy are a part of the tract ceded to that State by the treaty and deed of cession between it and the State of New York, made on the 16th day of December, 1786. The title of the plaintiffs rests mainly upon documentary evidence, and has been very frequently before the courts of this State, and been sustained hitherto against the objections taken to it by astute counsel. Having been so often subjected to the test of judicial scrutiny, we should not expect to discover at this day any very flagrant defects in it. The defence of this action is sought to be upheld, not by affirmative proof of right in the defendant, or of title out of the plaintiffs, but by technical objections to the documentary and other evidence offered by the plaintiffs, which seem not to have been noticed in former litigations involving the same title. It is a circumstance worthy of notice that the objections now taken might have been taken, and were as patent in former contestations as they now are, but were either overlooked by counsel or disregarded by the courts. Still, if valid, they must have effect, although discovered late.

It will not be necessary to do more than to consider the objections urged upon this appeal. The general history and chain of the title will be found in several of the reported cases in this State. (*Duke of Cumberland* v. *Graves,* 9 Barb., 595; S. C., 3 Seld., 305; *People* v. *Snyder,* 51 Barb., 589; S. C., 41 N. Y., 397.) The first exception and objec-

tion is to evidence taken pursuant to the act to perpetuate certain testimony respecting the title to the Pulteney estate, passed in 1821. (Laws of 1821, chap. 19.) The act authorized the perpetuation of testimony under the direction of the Court of Chancery, and made the same *prima facie* evidence of the facts set forth in the examination of the witnesses, if the chancellor should be of opinion that the depositions furnished good *prima facie* evidence of such facts. It is not objected that the depositions offered and read in evidence were not taken in due form, or that the opinion of the chancellor was not properly certified and given, to make the depositions evidence, if the same were competent in other respects.

But two objections were taken to this evidence upon the trial: First, that the legislature had no power to authorize the testimony to be taken *de bene esse* without giving any adverse party the right of cross-examination ; and, secondly, that the testimony as given in the deposition was mere hearsay, and upon points upon which hearsay evidence was incompetent. While the legislature cannot take from parties vested rights without compensation, the remedies by which rights are to be enforced or defended are within the absolute control of that branch of the government. The rules of evidence are not an exception to the doctrine that all rules and regulations affecting remedies are, at all times, subject to modification and control by the legislature. The changes which are enacted from time to time may be made applicable to existing causes of action, as the law thus changed would only prescribe the rule for future controversies. It may be conceded, for all the purposes of this appeal, that a law that should make evidence conclusive which was not so necessarily in and of itself, and thus preclude the adverse party from showing the truth, would be void, as indirectly working a confiscation of property, or a destruction of vested rights. But such is not the effect of declaring any circumstance or any evidence, however slight, *prima facie* proof of a fact to be established, leaving the adverse party at liberty to rebut

and overcome it by contradictory and better evidence. That this may be done is well settled by authority. (*Hand* v. *Ballou*, 2 Kern., 541; *Hickox* v. *Tallman*, 38 Barb., 608; *Commonwealth* v. *Williams*, 6 Gray, 1; Cooley's Const. Lim., 367, and cases cited.) The act of 1821 was not in excess of the legislative power.

The objection that the testimony taken under it was hearsay is not tenable. It was not all hearsay. Some of the facts stated by the witnesses were within their own knowledge. But if it were otherwise, the legislature made the chancellor the final arbiter to determine what should be good *prima facie* evidence of the facts stated; and such evidence, whether resting wholly upon hearsay or otherwise, is, under the act and within the authorities cited, conclusive in the absence of any evidence to controvert it or suggestion that it is untrue or mistaken. Perhaps some of the facts stated were susceptible of better proof, and the evidence might not have been admissible under the application of strict rules upon the trial; but upon reading the whole evidence, there was clearly sufficient to justify the chancellor in certifying that it was good *prima facie* evidence of the facts stated, those facts relating to the death of some parties and the succession and inheritance by the claimants of the large tract of land of which the *locus in quo* is a part. If, however, the evidence was slight and unsatisfactory, it would have been more easy to meet and overcome it before the jury. It is enough that it was competent; its effect was for the jury.

There is no force in the objection taken at the argument, that the chancellor merely certified that the depositions were *prima facie* evidence that the witnesses had heard and believed as they stated. To give it that interpretation would be trifling with a solemn judicial act. The certificate related to the facts which the statements tended to prove, and to prove which the depositions were taken, and to perpetuate the proof of which the act was passed.

The next objection is to the will of Sir John Lowther Johnstone, upon the grounds: First, that it did not appear that

the testator was twenty-one years old when the will was executed; secondly, that by the laws of the State he could not convey or devise the lands; and third, that being an alien he was incapable of making a devise of lands. The will having been regularly admitted to probate, and no objection being taken to the proof or the exemplification of the record of such will and proof as produced and given in evidence, it could only be impeached for incapacity of the testator, either by reason of nonage or imbecility, by direct proof of the facts alleged. Competency to execute an instrument thus solemnly proved will be presumed, until the contrary is shown. The right of Sir John Lowther Johnstone, notwithstanding his alienage, to devise lands within this State is clearly established by the judgment of this court in *The Duke of Cumberland* v. *Graves* (*supra*). This right was secured by the act of April 2, 1798, authorizing aliens to take and hold real property within the State, to them, their heirs and assigns, forever.

The objection to the deed from Charles H. Pierpont to the Duke of Cumberland and others, upon the ground that it was unauthorized by the act of 1798, and that there was no competent proof of its execution, was properly overruled.

The point urged upon the hearing in this court, that there was no authority proved in Jonathan Brundrett to execute in behalf of the Duke of Cumberland, was not taken at the trial, and if it had been taken would not have applied, as it was another deed, to which no objection was taken, that was executed by Mr. Brundrett; and no defect in the proof to the deed from Pierpont to the Duke of Cumberland is suggested.

Several objections were urged at the close of the trial to the right of the plaintiffs to maintain the action, all of which had respect to defects in the title of the State of Massachusetts, by reason of a failure to extinguish the Indian title and to comply with other conditions of the compact between the two States. Whether the fact that the Indian right of occupation, which was the extent of the right of the Indian

tribes to lands within the State, had not been extinguished with the sanction of the State government or abandoned by the Indians themselves, could be set up by one without title against the owner in fee, subject to the rights of the Indians and with the right of pre-emption from them, is questionable. The title of the Indians to the soil is founded upon simple occupancy, and they have no power to dispose of the soil except to the government, or one who has acquired from the government the right of pre-emption. (3 Kent's Com., 79, 80; *Strong* v. *Waterman*, 11 Paige, 607; *Goodell* v. *Jackson*, 20 J. R., 693; *Johnson's Lessee* v. *Mackintosh*, 8 Wheaton, 543; *United States* v. *Cook*, 19 Wal., 591.) In the case last quoted Chief Justice Waite says: "The possession, when abandoned by the Indians, attaches itself to the fee without further grant." (See *Jackson* v. *Hudson*, 3 J. R., 375.) · But this court held in *The People* v. *Snyder* (*supra*), that this court will take judicial notice that the tract of land of which the premises in dispute are a part, was ceded to the State of Massachusetts, and that under the proper authority of both States and of the nation the Indian title has been extinguished.

Courts will take notice of whatever ought to be generally known within the limits of their jurisdiction. The history of the Six Nations of Indians is a part of the history of the State, of which the courts will take notice. (1 Greenleaf's Ev., § 6.) It is a matter of notoriety that but few of the Indians that once were the occupants of the lands within the State are now dwellers within its boundaries, and their residence and occupation are restricted to a few well-known and legally established reservations of limited extent, set apart for their use. The statute books of the State need only be referred to to learn the extent of the present Indian occupancy. In addition to this presumption, the plaintiffs have produced, upon the argument of this appeal, authentic documentary evidence of the extinction of the Indian title.

Without considering in detail the several propositions urged by the learned counsel for the appellant, in impeach-

ment of the title of the State of Massachusetts and her grantees, and the proceedings to perfect it under the treaty, it is sufficient to say that upon a careful examination it appears that all the terms and conditions of the treaty, upon which depended the right of Massachusetts and her grantees to an absolute and indefeasible estate in the lands granted, have been substantially performed. The title has been recognized by the different departments of the State government, and its validity frequently affirmed by the courts; and it should not be overthrown at this late day upon slight or technical grounds, if any such exist. I have discovered no defects in the title.

The judgment must be affirmed.

All concur; FOLGER, J., not voting.

Judgment affirmed.