Barrett Chemical Company, Appellant, *v.* Julius Stern, Respondent.

*Trade mark — proprietary interest in the word "Roachsault" — preventive relief granted, where the public is liable to be deceived, although there be no attempt at imitation.*

The plaintiff, a manufacturer of an insecticide, adopted the word "Roachsault" as a designation for its goods, and procured such word to be registered as a trade mark in the patent office of the United States. Thereafter the defendant, who was engaged in putting up and selling an insecticide under the name of "Stern's Insectago," altered the label used by him by printing at the top of the label, in pronounced type, the words "Warranted Chemical Roach Salt."

*Held*, that although the difference in the appearance of the respective labels was such that it might be argued that there was no attempt at imitation or simulation, yet as the article sold by each party was to be used for the same purpose, and was designated by a name which, whether spelled in the arbitrary manner adopted by the plaintiff, or in the common English form adopted by the defendant, was precisely similar in sound, so that a person calling for one might receive the other, and still be supplied with what he called for, the plaintiff was entitled to preventive relief;

That the term " Roachsault" was not descriptive of the compound, but was an arbitrary or fanciful designation thereof, and that the plaintiff had a proprietary interest therein.

Van Brunt, P. J., dissented.

Appeal by the plaintiff, the Barrett Chemical Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 9th day of July, 1900, upon the decision of the court rendered after a trial at the New York Special Term dismissing the complaint upon the merits.

The following are descriptions of the labels mentioned in the opinion of Hatch, J. :

The plaintiff's label, reproduced below, is an engraved label four and one-half by two and one-quarter inches in size, printed in black ink on *white* paper, with tinted background.

PLAINTIFF'S LABEL.

The defendant's label is not engraved, type being used for the reading matter, and is five and one-half by two and three-quarters inches in size, printed in black ink on *yellow* paper.

DEFENDANT'S LABEL.

WARRANTED CHEMICAL ROACH SALT.

TRADE MARK.

**Tell your neighbors to use it or you will get a fresh supply of pests.**

DIRECTIONS.

Sprinkle freely and puff into crevices or anywhere insect pests are to be found. For Roaches and Water-bugs put freely under sinks, about shelves, closets and under the edge of Carpets, Base Boards and near all warm places like steam or hot air pipes.

If allowed to remain undisturbed for a few days, INSECTAGO will have destroyed all insects in the place.

*Charles B. Meyer*, for the appellant.

*Arthur Furber*, for the respondent.

HATCH, J. :

The complaint in this action avers that a corporation called the " Roachsault Manufacturing Company " adopted and began to use in its business in September, 1895, a trade mark for insecticide prepared and sold by it, consisting of the word " Roachsault," and that in December of that year it procured such word to be registered as a trade mark in the patent office of the United States, pursuant to an act of Congress authorizing the registration of trade marks, and that a certificate of such registration, No. 27,503, was issued to such corporation ; that about the ninth day of May said corporation transferred all of its right, title and interest in and to said trade mark, in connection with the business in which it had been used, to the plaintiff herein, and thereafter the plaintiff has continued and conducted its business under such trade mark ; that by advertising and other lawful means it has extended its business in the city of New York and elsewhere in the sale of said insecticide, and that under the said trade mark name it has become widely and favorably known, and has had an extensive sale in the city of New York and elsewhere. The complaint further avers that in March, 1897, the defendant was to a small extent engaged in putting up and selling an insecticide

under the name of " Stern's Insectago," and that, about the 1st day of April, 1897, the defendant caused the label by which he described his insecticide to be altered by printing on the top of the label in pronounced type the words " Warranted Chemical Roach Salt." Immediately thereafter, and upon learning of the defendant's use of such label, the plaintiff made complaint to the defendant, alleging that the use of such words was wrongful and in violation of the plaintiff's trade mark rights, and requested the defendant to discontinue the use of the said trade mark word, which the defendant refused to do, and continued and now continues the use of the same. The complaint further avers that since the alteration of such label by the defendant he has unlawfully prepared, sold and offered for sale his insecticide, and avers, upon information and belief, that many persons applying to dealers for insecticide have been furnished by such dealers with the defendant's insecticide, and that, as the sound in pronouncing the words used by the defendant is identical with the sound of the plaintiff's trade mark word, an opportunity has been furnished to dealers in defendant's insecticide to deliver the same as and for the plaintiff's insecticide. The complaint further alleges that, as plaintiff is informed and believes, the defendant altered his label so as to include therein the words " Roach Salt," because of the reputation of the plaintiff's trade mark, and that such use is unlawful and an infringement of the same, and has deprived the plaintiff of gains and profits and has occasioned him much expense and damage, wherefore he demands that the defendant be restrained from using such words, or any other word or words of similar import or sound to the plaintiff's, and that the defendant account for and pay over to the plaintiff the gains and profits which the defendant has made by reason of such infringement, and that he also recover such damage as he has sustained.

The plaintiff also attaches to his complaint and makes a part thereof the respective labels. It is clearly apparent that there is a considerable difference in their appearance, both as to the emblems appearing thereon, the arrangement and spelling of the words, the color of the label, the name of the article sold, and in the size and arrangement of the printed matter, and if the case turned upon the question whether there was imitation or simulation, by the defendant's label of the plaintiff's, a strong argument could be made in

favor of the defendant, based upon the ground that there is such a dissimilarity in the appearance as to exclude the idea of the deception of any person of average intelligence. Such is the view which seems to have been taken by the learned court below. But the fact remains that the article sold by both parties is to be used for precisely the same purpose, the destruction of insects, and it is clear that the specific designation of the compound is under a name which, whether it be spelled in the arbitrary manner adopted by the plaintiff, or in the common English form as adopted by the defendant, it is precisely similar in sound, and a person calling for the one might receive the other and be supplied with what was called for, although in fact, the purchaser might intend to purchase the compound of the plaintiff and not that of the defendant. It is evident, therefore, that a condition is created where the purchaser may easily be deceived, and the plaintiff be defrauded, and it is this condition which the law does not tolerate.

So far as the right exists to enjoin the infringement of a trade mark it is not made to depend upon the fact that deception was either intended or practiced. If the opportunity is furnished where deception may be practiced, a basis exists to grant relief. As was said by the court in *T. A. Vulcan* v. *Myers* (139 N. Y. 364), " no evidence was given or offered to show that any person had actually been deceived by the imitation of the plaintiff's trade mark, and we think that none was necessary for the maintenance of the action. It is the liability to deception which the remedy may be invoked to prevent. It is sufficient if injury to the plaintiff's business is threatened or imminent to authorize the court to intervene to prevent its occurrence."

It scarcely needs argument to show that the conditions which are averred to exist in this complaint create a situation which would enable an energetic and enterprising manager to substitute, to a considerable extent, the defendant's compound for that of the plaintiff. And while it may be true that a close or even casual scrutiny of the labels themselves would apprise an intending purchaser of the difference between the two compounds, yet it is well known that not all purchasers do make careful scrutiny, and some make none at all, while under many circumstances goods are purchased without being examined or seen, and if the purchaser calls simply for Roachsault,

the defendant's compound would answer that description as well as the plaintiff's, and it is this condition which the law interposes to prevent.

An interesting collection of cases is made in section 33 of Browne on Trade Marks (2d ed.), wherein the learned author has stated the differences which appear in words, labels and designs, and where the court felt called upon to interfere. A comparison of these cases with the present one clearly shows that this case is brought within the principle entitling the plaintiff to relief.

Upon the subject of damages, the questions of dissimilarity, intent to deceive, and actual deception will become pertinent subjects of inquiry and evidence. These are matters, however, to be determined by the court upon all the proof which is offered. The plaintiff may not prove any damages, but his action is not to be defeated for that reason. For, as we have already stated, the plaintiff is entitled to preventive relief upon showing that there may be deception practiced on account of the infringement. There can be no doubt but that the plaintiff obtained a proprietary right in the word "Roachsault." It is in no sense descriptive of the article sold, but is an arbitrary or fanciful designation of the compound. This brings it within that class of terms, or words, which may be adopted as a trade mark, or word, and in which the user or inventor acquires a property right which the law protects. (*Cohn* v. *Reynolds*, 26 Misc. Rep. 473; affd. on opinion below, 40 App. Div. 619.)

It follows from these views that the judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event.

Rumsey, Patterson and Ingraham, JJ., concurred; Van Brunt, P. J., dissented.

Judgment reversed, new trial ordered, costs to appellant to abide event.