(162 App. Div. 62)

### PREST–O–LITE CO. v. RAY et al.

(Supreme Court, Appellate Division, First Department.   April 17, 1914.)

1. TRADE-MARKS AND TRADE-NAMES (§ 43*)—MARKS AND NAMES SUBJECT OF OWNERSHIP—NAMES OF PATENTED ARTICLES.

The word "Prest-O-Lite," which was applied indiscriminately to acetylene gas prepared and stored according to a patented formula, and to the tank containing the same, was not subject to registration under General Business Law (Consol. Laws, c. 20) § 367, as added by Laws 1909, c. 475, providing for the registration of trade-marks, after the expiration of the patent.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 48, 49; Dec. Dig. § 43.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 42*)—REGISTRATION—STATUTE.

In enacting General Business Law (Consol. Laws, c. 20) § 367, as added by Laws 1909, c. 475, providing for the registration and protection of trade-marks, the Legislature did not attempt to confer trade-mark rights, but merely to more effectively regulate existing common-law trade-mark rights, and to afford an additional speedy remedy for the violation thereof, and to prevent fraud and imposition on the public, which are matters within the state's police power.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 47; Dec. Dig. § 42.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 43*)—MARKS AND NAMES SUBJECT OF OWNERSHIP—NAMES OF PATENTED ARTICLES.

A word used as a generic name for a patented article and also as a trade-mark becomes public property on the expiration of the patent, on the theory that it is essential to the public enjoyment of the rights under

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the patent, and it cannot thereafter be registered under General Business Law (Consol. Laws, c. 20) § 367, as added by Laws 1909, c. 475, providing for the registration of trade-marks.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 48, 49; Dec. Dig. § 43.*]

4. TRADE-MARKS AND TRADE-NAMES (§ 70*) — UNFAIR COMPETITION — IMITATION.

While the name by which a patented article had become known could not be used as an exclusive trade-mark after the expiration of the patent, the use of the name in such a way as to mislead the public as to the manufacturer of the article would be enjoined.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. § 70.*]

5. TRADE-MARKS AND TRADE-NAMES (§ 11*)—MARKS AND NAMES SUBJECT OF OWNERSHIP—NAMES OF PATENTED ARTICLES.

A licensee under a patent, like the owner thereof, loses, with the expiration of the patent, his exclusive right to the use as a trade-mark of a name which he applied to a patented article and permitted it to become known by, during the life of the patent.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 15; Dec. Dig. § 11.*]

McLaughlin and Hotchkiss, JJ., dissenting.

Appeal from Appellate Term, First Department.

Action by the Prest-O-Lite Company against Frederick Ray and others. From an order affirming a judgment for the plaintiff (147 N. Y. Supp. 219), defendants appeal. Reversed, and complaint dismissed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and HOTCHKISS, JJ.

Howard S. Gans, of New York City, for appellants.
Keyes Winter, of New York City, for respondent.

LAUGHLIN, J. [1] The recovery was for the penalty given by section 367 of the General Business Law, being chapter 20 of the Consolidated Laws, as amended by chapter 475 of the Laws of 1909, which added said section thereto.

The plaintiff was duly incorporated under the laws of Indiana in September, 1904. It has been duly authorized to do business in this state and has a plant at Astoria, Queens county, N. Y., where it manufactures and prepares for sale and sells there and elsewhere acetylene gas in five sizes of copper-plated steel shells, containers, cylinders, or tanks, which for brevity will be designated "tanks," containing porous asbestos brick or disc fillers for absorbing acetylene gas dissolved in a liquid acetone solvent for use in lighting motor vehicles; the gas, when thus dissolved in the acetone, being forced into the tanks under pressure. There is only one method by which acetylene gas is manufactured, and that is by adding carbide to water, whereby the gas is given off. The gas is extremely soluble in water, and, according to the evidence, is dangerous under pressure unless "stored in a safety material." The plaintiff has a standard formula for thus preparing the gas in the acetone solvent for storage in the tanks. When the gas is dissolved in liquid acetone and inserted in the tanks according to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the plaintiff's formula, a tank will hold 40 cubic feet of acetylene gas at a pressure of 225 pounds—the unit whether per square foot or inch is not given—at a temperature of 60 degrees Fahrenheit, or eight times the quantity that a tank would hold if the gas were not thus dissolved in the acetone liquid solvent and absorbed in the asbestos fillers under pressure. When desired for lighting, the gas is admitted to the burner from the tank through a needle valve at the convex end at a substantially uniform pressure, and the ordinary tank for ordinary use on automobiles, when thus filled, affords light of uniform intensity for about 40 hours. The plaintiff manufactures both the tanks and gas; but, as already observed, the gas it manufactures is the same as that manufactured by its competitors; the only difference shown by the evidence being with respect to the manner of preparing and storing the gas in the tanks for use.

The plaintiff is not engaged in the business of manufacturing or selling the tanks excepting as filled or to be filled with gas according to its formula. There is evidence tending to show that since the commencement of this action a single sale of an empty tank was made for $11.65 at the plaintiff's branch office in New York, for use with a welding machine for experimental purposes, but not to be used in affording light for motor vehicles; and there is evidence tending to show that the plaintiff sells its tanks to wholesale dealers at $13.65 each, less a discount for cash, to be filled, however, with gas manufactured by it and according to its formula, for which it charges the wholesalers $1 per tank, and that it retails and authorizes the retailing of the tanks filled and ready for use for $25 each, on the representation and assurance, but without a formal agreement, that they may be exchanged when empty for filled tanks at any one of plaintiff's 13 plants or 26 branch offices, or at any one of some 1,500 exchanges maintained by it for that purpose throughout the United States, Canada, Mexico, Europe, and the Philippine Islands, for a charge, varying according to the place, of from $1.50 to $3 for each exchange. The plaintiff since its incorporation has sold between 650,000 and 700,000 of these tanks. The ordinary life of a tank is at least 15 years. It is conceded that on the initial sale of a tank the plaintiff parts with all its right, title, and interest therein. At the concave end of each tank there is a safety plug and gauge with the hyphenated word "Prest-O-Lite" stamped on the gauge. On the cylindrical body of the tank there is attached a square label on which is etched in large letters the same hyphenated word "Prest-O-Lite," and the date of the patent under which the plaintiff originally manufactured and sold the tanks and gas, and since July, 1910, a notice, "This Side Up," and an inscription signed in the name of the plaintiff and its licensor, as follows:

"In consideration of its return to us for exchange when empty, this device is sold and licensed for sale and use only when filled with gas and acetone compressed by us, and when sold for not less than $25."

On the 25th day of December, 1900, the United States Patent Office duly issued letters patent No. 664,383 to G. M. A. Claude and G. A. Hess, the inventors and their assignee, for an apparatus for storing and distributing acetylene gas, and in the specifications forming

part of the letters patent it is recited that the apparatus, to which the invention pertains, "is designed to carry out a process of storage and distribution involving the employment of a chamber charged with a solvent of the gas to be stored and into which the gas is forced under suitable pressure," and that the tank is to be charged at a central station or distributing point and transported "as a complete article or 'package' adapted to be placed in communication with the burners" where the light is desired, and that:

"To this end the apparatus embodying the present invention consists, essentially, in a closed receptacle containing acetylene gas in solution and having an outlet for the gas so positioned as to be normally above the level of· said solution and adapted to be provided with a burner or connected with a pipe system for the final use of distribution of the gas which escapes from the solution owing to the diminution of pressure when the said outlet is opened."

It is not necessary to describe the patent in full. It is sufficient to say, for the purposes of this appeal, that it covered the tank and its contents, prepared and filled as already described, as a complete package ready for commercial use. Each of the six specifications of the invention, as claimed by the inventors, and upon which the patent was granted, shows that the patent was claimed on the "prepared package" or "closed vessel" containing acetylene gas so dissolved in a solvent and stored, described in one of the specifications as "a gas-package."

It was held by the federal courts, and is now conceded, that the letters patent expired with a former similar English patent on the 30th day of June, 1910. Commercial Acetylene Co. and Prest-O-Lite Co. v. Schroeder et al., 203 Fed. 276, 121 C. C. A. 474. Prior to that time the plaintiff, to the extent of its license from the patentees, had an exclusive monopoly of the right to prepare and market acetylene gas in package or tanks in accordance with the letters patent; but that right expired with the letters patent, and it has since been, and now is, open to all the world to adopt the plaintiff's style and form of tank and formula for preparing, storing, and selling acetylene.

The plaintiff attempted to register the word "Prest-O-Lite" as a trade-mark pursuant to the provisions of said section 367 of the General Business Law, and its right to recover the penalty depends upon whether it is entitled to the protection of the provisions of the statute in the use of the hyphenated word "Prest-O-Lite" as a trade-mark on tanks containing gas manufactured by it.

When article 24 of the General Business Law, entitled "Trade-Marks," went into effect on the 17th day of February, 1909, it contained only sections 360–366, inclusive, which related to certain specifically enumerated trade-marks. By adding section 367 thereto, the Legislature brought within the regulation and protection of the statute other trade-marks by general language. Section 367 was analyzed by the Legislature itself, as shown by the heading thereto, as one containing "further provisions concerning trade-marks on articles of merchandise." The first sentence of the section is as follows:

"Any person or corporation engaged in manufacturing, packing, bottling, or selling any article of merchandise, put up by him for sale in any bottle, vessel, box, package or other receptacle with his name, trade-mark, label or private mark appearing in any way thereon, or branded, stamped, affixed, blown or

impressed thereon, may file in the office of the secretary of state, and in the office of the county clerk of the county where the same is manufactured, packed, bottled or put up for sale, or where his, its or their principal place of business is situated, or if such person or corporation shall manufacture, pack or bottle outside of this state, then in any county of this state, and also in the office of the secretary of state, a description, specimen or fac simile of the name, trade-mark, label or other private mark so appearing thereon or so branded, stamped, affixed, blown, impressed or otherwise marked thereupon, and he shall thereupon be deemed the proprietor of such name, trade-mark, label, or other private mark."

The act next provides that a certificate of the record of the trade-mark, which for brevity I shall use as referring to the three terms "trade-mark, label, or other private mark," shall be delivered to the person or corporation filing it, and that, upon publishing the description, specimen, or fac simile as therein provided, the certificate shall be prima facie evidence in any action under the statute, or in any prosecution or action under any statute of the state, and in any action or prosecution to recover damages for the violation of the trade-mark, or to prevent the infringement thereof, of the ownership and use of the trade-mark by the person to whom it was issued. The statute also contains provisions designed to protect holders of such certificates against the subsequent registration of trade-marks identical with or similar to theirs, unless the right thereto by prior adoption be established upon a hearing as therein provided, and in that case the first registration is required to be revoked. Actions in the Supreme Court are also authorized for the revocation of such registrations by others than lawful owners. The statute next provides:

"No person other than such proprietor of such label, trade-mark or other private mark which has been filed in the office of the Secretary of State and in the office of the county clerk, as aforesaid, shall sell, keep or offer for sale in, from or out of, or fill, place or put into, any vessel, box, package, bottle or receptacle on which any such names, labels or marks in any manner appear, and while so branded, stamped, labeled, blown, impressed or marked, any article or substance other than the original contents placed therein by the proprietor of the label, trade-mark or other private marks thereon, or sell, keep or offer for sale any article or substance in, from or out of, or fill, or place, or put any article or substance into any vessel, box, package, bottle or receptacle on which said label and trade-mark in any manner appears or which shall bear or have branded, stamped, labeled, blown, impressed or otherwise marked thereon, any imitation or counterfeit of any such label, trade-mark or other private mark so filed in the office of the secretary of state and county clerk as aforesaid. No person other than such proprietor in such cases where filing and publication is made as aforesaid, shall remove, deface or obliterate any device, brand, stamp, mark, name, trade-mark or other private marks impressed, stamped or blown into the substance of which any such vessel or receptacle is composed, without the written permission of such proprietor or unless there has been a sale to such person of such vessel or receptacle exclusive of the contents thereof by such proprietor. No person other than such proprietor shall, without his permission, use, traffic in, purchase, sell, dispose of, convert, mutilate, destroy or willfully or unreasonably refuse to return or deliver to such proprietor on demand, any such vessel or receptacle belonging to such proprietor, which is branded, stamped, or marked by having any such registered design, device, name or mark blown or impressed into the substance of which the vessel or receptacle is composed or sell or dispose of any such vessel or receptacle without obliterating or defacing such label, trade-mark or other private mark if such obliterating or defacing can be done without substantial injury to the vessel or receptacle on which it appears or to

which it is affixed providing filing and publication has been made as aforesaid. Nothing herein contained shall be construed as preventing the traffic in any bottles or other receptacles without contents, with or without obliteration or defacement of the trade-mark upon it, when such trade-mark can be obliterated or defaced without substantial injury to the bottle or receptacle, the intention of this section being to protect the owners of trade-marks and labels against imitation and refilling of all packages and receptacles while bearing such trade-marks."

It is further provided that for every violation of the statute the person violating it shall forfeit to the registered proprietor of the trade-mark $100, but that the written consent of such registered proprietor shall be a defense to an action for the penalty.

Pursuant to the provisions of this statute, the plaintiff on the 5th day of December, 1912, filed in the office of the clerk of the county of Queens a notice, signed in its name by its manager for the state of New York and duly verified by him, addressed, "To all whom it may concern," stating that the plaintiff, a foreign corporation authorized to do business in this state and engaged in manufacturing in the county of Queens "and selling a mixture consisting of acetylene dissolved under pressure in acetone in steel cylinders or vessels," declared, pursuant to the provisions of the statute in question which are specified, "that it has and does now appropriate as its trade-name or trade-mark the hyphenated, arbitrary word 'Prest-O-Lite,' " and that said name or trade-mark is stamped and etched by the plaintiff and appears on all of the vessels, receptacles, or cylinders in which dissolved acetylene is placed and sold by the plaintiff, and that the particular goods for which it has been and is intended to be appropriated "consists of the said acetylene dissolved under pressure in acetone and stored in said vessel," and that the plaintiff "has the sole right to use the same as its trade-mark, and no other person, firm, or corporation has the right to such use." Two days later it filed a like notice in the office of the Secretary of State. The record contains a recital that a certificate of this filing was issued to the plaintiff by the second deputy secretary of state; but the exhibit offered in evidence to show that fact does not show it. No question, however, appears to have been raised upon the trial, and no point is made on the appeal with respect to the sufficiency of the evidence to show that plaintiff obtained a certificate of the registration as provided in the statute. The plaintiff also showed by the affidavit of the foreman of the Daily Star that it was a daily newspaper printed and published in said county of Queens, and that a certified copy of said notice filed with the clerk of said county was published in said newspaper "once in each week for three successive weeks (three insertions) commencing December 5, 1912, and ending December 19, 1912."

A question appears to have been raised upon the trial with respect to the sufficiency of the proof of publication, but no point with respect thereto is made upon the appeal. It appears that both parties desire a decision on the merits, and in the circumstances it seems unnecessary to consider the sufficiency of the proof of publication; but it may be observed that the affidavit may be construed as relating to the dates of the insertions, and not to the time when the publication became complete under the statute, and, as it became effective before the sale in

question if the third insertion was on the 19th of December, there would seem to be no objection to the judgment on that ground.

The defendants deal in automobile accessories, and their place of business is at No. 1651 Broadway, borough of Manhattan, New York. On the 16th day of January, 1913, one Jones took an empty tank of the plaintiff's manufacture into the defendants' store and asked for "a refilled tank," and received another tank of the plaintiff's manufacture which had been refilled by the Searchlight Gas Company, at Camden, N. J., with acetylene gas manufactured by it, for which Jones was required to pay $1.50. The word "Prest-O-Lite" on the body of the tank thus received by Jones was visible through a torn part of a yellow label with which the Searchlight Gas Company covered it. Two paper labels of the Searchlight Gas Company had been attached to the tank. One was a square yellow label, upon which was printed in black a notice in the name of that company to the effect that the tank had been refilled with acetylene gas made by it according to its system of acetylene storage. The other was a round yellow label printed in red containing a "cold weather notice" in the name of the Searchlight Gas Company, stating the effect on the pressure of taking the tank from a warm to a cooler atmosphere. The name "Prest-O-Lite" on the gauge of the tank was not covered by either label. This tank as thus filled came into the possession of the Searchlight Gas Company in New York about the 8th day of December, 1912, and it had been received by it in New Jersey about ten days prior thereto.

[2] The plaintiff, in the first instance, for proof of its right to the word "Prest-O-Lite" as a trade-mark, rested on the presumption declared by the statute. The defendant raised various objections to the constitutionality of the statute, which, in the view we take of the case, are not necessarily presented for decision, and no opinion will be expressed thereon. It may be observed, however, that the Legislature by this statute has not attempted to confer trade-mark rights, but merely to more effectively regulate existing common-law trade-mark rights and to afford an additional speedy remedy for the violation thereof, and to prevent fraud and imposition on the public, which are matters within the police power of the state. People v. Luhrs, 127 App. Div. 634, 111 N. Y. Supp. 749, affirmed 195 N. Y. 377, 89 N. E. 171; People v. Cannon, 139 N. Y. 32, 34 N. E. 759, 36 Am. St. Rep. 568; Mullins v. People, 24 N. Y. 399; People v. New York Carbonic Acid Gas Co., 196 N. Y. 421, 90 N. E. 441; Hathorn v. National Carbonic Acid Gas Co., 194 N. Y. 326, 87 N. E. 504, 23 L. R. A. (N. S.) 436, 128 Am. St. Rep. 555, 16 Ann. Cas. 989; Ohio Oil Co. v. Indiana, 177 U. S. 190, 20 Sup. Ct. 576, 44 L. Ed. 729; Taendsticksfabriks Aktiebolagat Vulcan v. Myers, 139 N. Y. 364, 34 N. E. 904; Barrett Chemical Co. v. Stern, 56 App. Div. 143, 67 N. Y. Supp. 595; Ricker v. Leigh, 74 App. Div. 138, 77 N. Y. Supp. 540.

The act of Congress of March 3, 1881, which is the federal statute with respect to the registration of trade-marks enacted after a former statute had been declared unconstitutional, contains like provisions with respect to the effect of the registration as evidence. Elgin Nat. Watch Co. v. Illinois Watch Co., 179 U. S. 665, 21 Sup. Ct. 270, 45 L. Ed. 365. The Legislature has merely attempted to declare what shall be prima facie evidence in such cases, and we will assume that it

was competent for it to declare that the presentation of the certificate of registration of the trade-mark with proof of compliance with the statute, in view of the careful provisions made for annulling the registration of trade-marks at the instance of persons not entitled thereto, is presumptive evidence of the right thereto in an action to recover the penalty. See Howard v. Moot, 64 N. Y. 262; Colman v. Shattuck, 62 N. Y. 348; People v. Cannon, 139 N. Y. 40, 34 N. E. 759, 36 Am. St. Rep. 668; People v. Johnson, 185 N. Y. 229, 77 N. E. 1164. The defendant, however, thereupon showed the facts already stated with respect to the issuance of a patent pursuant to which, and to the license granted thereunder, plaintiff manufactured the gas packages; and further showed that the name "Prest-O-Lite" was used both as a generic name to designate the gas package and as a trade-mark indicating the origin and manufacture of the contents of the tank.

There is no doubt from the evidence that the word "Prest-O-Lite'' conveyed to those familiar with gas used for lighting automobiles information that the tanks upon which that name appeared contained gas prepared and stored therein according to the formula for which the patent had been issued and which was used by the plaintiff, and also that the gas therein had been so manufactured and stored by the plaintiff. It is fairly to be inferred from the evidence that gas prepared for use and stored in that particular manner became known as "Prest-O-Lite" gas, and that the tanks were known as "Prest-O-Lite" tanks, and that the word "Prest-O-Lite" was understood by the trade as indicating not merely acetylene gas manufactured by the plaintiff, which is the same as the acetylene gas manufactured by all other dealers, but acetylene gas prepared in this particular manner, which seems to have afforded a greater capacity to the tank and to have afforded a steady light and safety owing to the strength of the tank. The plaintiff advertised its gas tanks as "Prest-O-Lite Gas Tanks," and in its advertisements it referred to its customers as "users of Prest-O-Lite," and published a booklet with a picture of the tank on the cover with the words "Prest-O-Lite Gas Tank" printed thereon in the form of a label, and the words, "The Light Universal," also printed on the cover. The patent under which these tanks were originally manufactured, in so far as it covered the container of the gas, was general; no model having been filed and no specific dimensions having been given. The plaintiff undoubtedly had during the life of the patent established an extensive business under which the purchasers of tanks manufactured by it, containing gas manufactured and prepared for storage and stored therein by it, were afforded the valuable privilege of exchanging empty tanks for refilled tanks at a comparatively low price throughout the world where automobiles are used, and the name "Prest-O-Lite" also, in a sense, represented the plaintiff's system of doing business. The name "Prest-O-Lite" was applied indiscriminately to the tank and to the contents thereof prepared and stored according to the plaintiff's formula, which for a time was protected by letters patent.

[3, 4] The case therefore falls within the rule established by the federal decisions that a name used during the life of a patent both as a generic name for the patented article and as a trade-mark to indi-

cate the origin of the manufacture becomes public property on the expiration of the patent, on the theory that it is essential to the public enjoyment of the right to manufacture and sell that which was theretofore protected as a private monopoly by the letters patent, that the public shall have the right to the use of the name by which the article was known. Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118; Holzapfel's Co. v. Rahtjen's Co., 183 U. S. 1, 22 Sup. Ct. 6, 46 L. Ed. 49; Coats v. Merrick Thread Co., 149 U. S. 562, 13 Sup. Ct. 966, 37 L. Ed. 847. See, also, Waterman et al. v. Shipman et al., 130 N. Y. 301, 29 N. E. 111. Notwithstanding the expiration of the letters patent and of this public right to use the plaintiff's formula and to manufacture and use tanks precisely the same as those manufactured and used by the plaintiff, still the plaintiff would be entitled to protection by injunctive relief against unfair competition, and those manufacturing and selling gas in tanks under the name "Prest-O-Lite" could and should be so restricted in the use of that name as to prevent them from misleading the public into thinking that the gas they were selling was manufactured by the plaintiff. Singer Mfg. Co. v. June Mfg. Co., supra; Herring-Hall-Marvin Safe Co. v. Hall, 208 U. S. 554, 28 Sup. Ct. 350, 52 L. Ed. 616; Westcott Chuck Co. v. Oneida Co., 199 N. Y. 247–251, 92 N. E. 639, 139 Am. St. Rep. 907, 20 Ann. Cas. 858. This action, however, was not brought for such relief or in a court competent to grant it.

The learned counsel for the respondent argues that it cannot be successfully maintained that the word "Prest-O-Lite" was used by the plaintiff as a generic name descriptive of or to designate the particular style of its gas package manufactured under the license from the owner of letters patent, for the reason that it was not either the owner or a general licensee of the patent, but that its license was limited both as to territory and as to the use to which the gas manufactured and so prepared by it should be applied, and it cites numerous decisions in which it was held that it had acquired a proprietary right to use the hyphenated word as a trade-mark. See Prest-O-Lite v. Avery Portable Light Co. (C. C.) 161 Fed. 648; Same v. Post & Lester (C. C.) 163 Fed. 63; Same v. H. W. Bogen, Inc., et al. (C. C.) 209 Fed. 915; Same v. Arthur C. Davis et al. (D. C.) 209 Fed. 917. He also contends in his points that other names are used by other licensees in manufacturing acetylene gas pursuant to the letters patent; but there is no evidence on that point in the record.

[5] The plaintiff evidently succeeded to the rights of a company which had a license from the assignee of the patent under date of March 8, 1905, which, subject to a right of renewal for two years therein provided for, was to expire on the 31st day of December, 1905, and which was first renewed for two years and subsequently renewed for a period of ten years, which more than covered the life of the patent. The original license of March 8, 1905, was unrestricted as to territory and was for the manufacture and sale of "the acetylene storage cylinders and appurtenances covered by the letters patent, * * * but only for the purpose of use in connection with the lighting of lamps on automobiles, carriages and other moving vehicles, but not including

railway and tram cars, or boats or marine vessels." The last renewal of the license, which was on the 24th of October, 1906, contained a provision by which the parties agreed that it should include "the license to manufacture and sell automobile cylinders in the Dominion of Canada; it being understood that all cylinders shall be (sic) shipped into Canada in an incomplete condition, viz., without acetone or acetylene to our Canadian Branch, for completion; this condition being for the protection of our patents." There is no evidence that there was any other manufacturer of acetylene gas prepared and stored for use in lighting automobiles and other moving vehicles under the letters patent. There is no difference in principle between the use of a name by a licensee, having an exclusive license to the extent of such use, to designate a patented article manufactured by it, and the use of the name by the owner of the patent. The licensee therefore, like the owner of a patent, loses with the expiration of the patent his exclusive right to the use as a trade-mark of a name which he applied to a patented article and permitted it to become known by during the life of the patent.

It follows that the determination of the Appellate Term is reversed, with costs, and the judgment of the Municipal Court reversed, with costs to the appellant, and the complaint dismissed, with costs.

INGRAHAM, P. J., and SCOTT, J., concur. McLAUGHLIN and HOTCHKISS, JJ., dissent.

(162 App. Div. 75)

PREST-O-LITE CO. v. BROCKNER.

(Supreme Court, Appellate Division, First Department. April 17, 1914.)

Appeal from Appellate Term, First Department.

