TEANIE HOWELL ET AL. V. W. C. HURLEY ET AL.

(Filed 8 December, 1915.)

1. Grants—State's Lands—Copies—Seal of State—Presumptions—Evidence—Constitutional Law.

An abstract of a grant of State's land by the Secretary of State imports the regularity of its issuance and that the constitutional mandate of affixing the seal to the original had been legally complied with, though the abstract gives no indication thereof, the regularity of the official con-duct in granting the original being presumed; and the abstract may be introduced as competent evidence on the trial of an action involving the title to the lands described in the grant, by one claiming under it.

2. Grants—Entries—Seal of State—Presumptions—Interpretation of Statutes.

The Legislature has the power to change the rule of evidence when the party affected has been given ample time to protect his rights under the statute, and ch. 249, Laws 1915, declaring that certified copies of entries of grants of the State's lands may be received in evidence on trial in-volving title to the lands therein described, under the presumption that the Great Seal of the State was affixed to the original grant, in the absence of evidence to the contrary, is constitutional and valid. ·

APPEAL by defendants from Lane, J., at September Term, 1915, of MONTGOMERY.

Action to recover land. The facts are fully stated in the former ap-peal.*

Since the former decision, and before the new trial was had, the General Assembly enacted the following statute, being ch. 249, Laws 1915:

Whereas, for a long period of time many grants for lands in this State were duly issued in manner provided by law, and records thereof were made and kept in the proper books for recording grants issued by the State, but in recording said grants the same were not copied in full. upon said records; and,

Whereas, in many instances the Secretary of State appears to have recorded only memoranda or abstracts of grants so issued, showing the number and date of the grant, the name of the grantee and the descrip-tion of the lands conveyed, with the name of the Governor and the Secretary of State, but without reciting the Great Seal of State or indi-cating the name on the record; and,

Whereas, in some instances the Secretary of State has also failed to indicate on the record the signature of the Governor and. countersigning by the Secretary of State, and has failed to recite or indicate the Great Seal of State on the record; and,

*This case was decided at Fall Term, 1914, but by inadvertence, evidently due to the burning of the printing plant, does not appear among the reported cases. It will be found at the end of this volume.

*Whereas,* some question has arisen as to whether or not certified copies of such grants so recorded are competent to be offered in evidence in the courts of this State for the purpose of showing title out of the State of North Carolina: now, therefore,

*The General Assembly of North Carolina do enact:*

SECTION 1. That for the purpose of showing title from the State of North Carolina to the grantee or grantees therein named, and for the lands therein described, duly certified copies of all such grants and of all such memoranda and abstracts of grants shall be competent to be offered in evidence in the courts of this State, or of the United States, or of any territory of the United States, and, in the absence of the production of the original grant, shall be conclusive evidence of a grant from the State to the grantee or grantees named, and for the lands described therein.

SEC. 2. That duly certified copies of such grants and of such memoranda and abstracts of grants may be recorded in the county where the lands therein described are situated, and the records thereof in such counties or certified copies thereof shall likewise be competent to be offered in evidence for the purpose of showing title from the State of North Carolina to the grantee or grantees named, and for the lands therein described.

SEC. 3. That all such records of grants and of such memoranda and abstracts of grants in the office of the Secretary of State are hereby validated and made of the same effect as if the same had been copied in full upon the record of grants in said office.

SEC. 4. That this act shall be in force and effect from and after its ratification.

Ratified 9 March, 1915.

On the new trial a certified copy from the office of the Secretary of State of the paper referred to as the grant to Jacob Lassiter was admitted in evidence and the defendants excepted.

There was a verdict and judgment for the plaintiffs and the defendants appealed.

*Brittain & Brittain and J. A. Spence for plaintiffs.*
*Jerome & Jerome for defendants.*

ALLEN, J. Was the paper referred to as the grant to Jacob Lassiter properly admitted in evidence? This is the only question raised by the appeal, and it is conceded by the defendant that if it is answered in the affirmative the judgment of the Superior Court ought to be affirmed, and the plaintiffs admit that if it is answered in the negative a new trial should be ordered.

When the case was here on the former appeal the paper was treated in the argument as a grant and was so dealt with by the Court, and,

there being no seal and no evidence of one, it was held in obedience to the plain mandate of the Constitution that it was not valid as a grant, but, upon a more careful inspection of the paper, and after comparison with records in the office of the Secretary of State, while it may be held in form a grant, under the rule of construction adopted in *Triplett v. Williams,* 149 N. C., 394, and frequently affirmed since then, it more nearly conforms to abstracts of grants, which are memoranda of grants made from the original grant by the Secretary of State and entered of record, containing the name of the grantee and the description of the land, than to grants themselves, and, if so, the presumption of the regularity of official conduct would prevail.

In other words, as the abstract could only be made legally, and recorded, if the Secretary of State had before him a grant issued under the Great Seal of the State, in the absence of evidence to the contrary, it would be presumed that the Great Seal was affixed.

We had occasion to consider this question in *Poplin v. Hatley, ante,* 163, and it was then held that a will of date 1862, which was recorded, but without any record of a probate, was presumed to have been properly probated from the fact that it was on record.

The Court said: "The paper is in its proper place on a record of the court, and it is there rightfully or wrongfully. Is the presumption that the officer who transcribed it did so legally, or that he did so without legal authority? The authorities seem to be practically uniform in favor of the presumption that the officer acted regularly and in accordance with law.

" 'The general presumption is that public officers perform their official duty and that their official acts are regular, and, where some preceding act or preëxisting fact is necessary to the validity of an official act, the presumption in favor of the validity of the official act is presumptive proof of such preceding act or preëxisting fact.' 22 A. & E. Ency., 1267.

" 'It will be presumed that public officers have been duly elected, and that they have qualified; that their official acts are properly performed, and, in general, that everything in connection with the official act was legally done, whether prior to the act, as giving notice, serving process, or determining the existence of conditions prescribed as a prerequisite to legal action.' 16 Cyc., 1076.

" 'It is a rule of very general application that where an act is done which can be done legally only after the performance of some prior act, proof of the latter carries with it the presumption of the due performance of the prior act.' *Knox County v. Bank,* 147 U. S., 91.

" 'The fact that an official marriage license was issued carries with it a presumption that all statutory prerequisites thereto had been complied with. This is the general rule in respect to official action, and one who

claims that any such prerequisite did not exist must affirmatively show the fact.' *Nofire v. United States,* 164 U. S., 657.

"This principle has been applied in our State in *Clifton v. Wynne,* 80 N. C., 147; *Gregg v. Mallett,* 111 N.. C., 76; *Morris v. House,* 125 N. C., 556; *Cochran v. Improvement Co.,* 127 N. C., 394, and in other cases.

"In *Gregg v. Mallett, supra,* the Court says: 'But by the general rules of evidence certain presumptions are continually made in favor of the regularity of proceedings and the validity of acts. It is presumed that every man in his private and official character does his duty until the contrary is proven; it will presume that all things are rightly done unless the circumstances of the case overturn this presumption. Thus it will presume that a man acting in a public office has been rightfully appointed, that entries found in public books have been made by the proper officer; and like instances abound of these presumptions.'

"*Nelson v. Whitfield,* 82 N. C., 50, is almost directly in point. In that case the records had been destroyed and the original will could not be found, and the parties claiming under the will had to rely upon proof of its contents by witnesses who had seen the will on the record, but they were not able to furnish any evidence that it had been probated or that a certificate of probate was recorded, and the Court, dealing with this question, says: 'At the date of the alleged execution of the will the courts of pleas and quarter sessions had jurisdiction of the probate of wills and were directed to order them to be recorded in proper books kept for that purpose. They were to be recorded in these books after probate had. The fact, then, that the will of Benjamin Whitfield was found in a book kept by the clerk of the court of pleas and quarter sessions in accordance with the requirements of law is *prima facie* evidence of the probate of the will. *Omnia presumuntur rite acta esse.* There was evidence, then, to go to the jury of the existence of the will of Benjamin Whitfield and that it had been duly proved and recorded.' "

If, however, we treat the paper as a grant we are of opinion that the act of 1915 is valid and that it authorized the admission of the paper in evidence. The act does not purport to validate a grant issued without affixing the Great Seal of the State, but it in effect declares that certified copies from the office of the Secretary of State shall furnish evidence that the seal was affixed to the original grant in the absence of evidence to the contrary, and, so considered, it merely changes a rule of evidence, which is in the power of the General Assembly.

The author says, in Modern American Law, vol. 11, p. 334: "The right to a particular remedy is not a vested right. This is the general rule, and the exceptions are of those peculiar cases in which the remedy is part of the right itself. As a general rule, every State has complete

control over the remedies which it offers to suitors in the courts. It may abolish one class of courts and create another. It may give a new and additional remedy for a right or equity already in existence. And it may abolish old remedies and substitute new; or even without substituting any, if a reasonable remedy still remains. Thus, the Legislature may change the provisions of the statute of limitations so as to affect the remedy on existing contracts, provided it leaves a reasonable time within which to enforce a right under the contract. It may change the rules of evidence; but not to such extent as to render incompetent any evidence of an existing contract"; and, again, it is said in 8 Cyc., 1915: "A law which establishes a rule of evidence respecting certain past transactions cannot be said to impair the obligation of contracts. Laws which change the rules of evidence relate to the remedy only."

In *Tabor v. Ward*, 83 N. C., 294, the Court treats this power of the General Assembly as settled and beyond controversy. *Ashe, J.,* speaking for the Court, says: "It is well settled by a long current of judicial decisions, State and Federal, that the Legislature of a State may at any time modify the remedy, even take away a common-law remedy altogether, without substituting any in its place, if another efficient remedy remains, without impairing the obligation of the contract. And whatever belongs to the remedy may be altered, provided the alteration does not impair the obligation of the contract. Cooley Const. Lim., 350. Laws which change the rules of evidence relate to the remedy only. They are at all times subject to modification and control by the Legislature, and changes thus made may be made applicable to existing causes of action. *Howard v. Moot,* 64 N. Y., 262; Cooley, 353. They are incident to the remedy, and if the remedy may be abolished or modified, *a fortiori* may the rules of evidence be changed or abrogated."

A striking instance of the exercise of legislative power to change the rules of evidence and one seemingly in conflict with the classification of *ex post facto* laws, by *Mr. Justice Chase* in *Calder v. Bull,* 3 Dall., 386, is furnished by *Thompson v. Missouri,* 171 U. S., 380. The plaintiff in error, Thompson, was tried and convicted in the courts of Missouri upon the charge of murder by poisoning with strychnine, and, upon the trial, the State was permitted to introduce letters written by Thompson to his wife for the purpose of comparison with a prescription which it was alleged he had written. He appealed to the Supreme Court of Missouri and a new trial was ordered for error in admitting the letters. Pending the new trial the General Assembly of Missouri passed an act making the letters competent, and upon the new trial the letters were again introduced and Thompson was again convicted. He appealed to the Supreme Court of Missouri, where the judgment was affirmed, and then sued out a writ of error to the Supreme Court of the United States,

and that Court sustained the judgment of the Supreme Court of Missouri.

We are therefore of opinion that whether the paper-writing is treated as an abstract or as a grant, it was properly admitted in evidence upon the last trial.

No error.