(10 Misc. Rep. 577.)

### DE LONG et al. v. DE LONG HOOK & EYE CO.

(Supreme Court, Special Term, New York County. December, 1894.)

TRADE-NAMES—GIVING NAME TO CORPORATION.
   The right of a person to use his own name in his own business does not authorize him to lend or give his name to a corporation for the purpose of engaging in a business which has been conducted by others under precisely the same name.

Action by Frank E. De Long and others against the De Long Hook & Eye Company to restrain the use by defendant of the name "De Long." Judgment for plaintiffs.

Stern & Rushmore, for plaintiffs.
Benno Loewy, for defendant.

O'BRIEN, J. This action is brought to enjoin the defendant from using the name "De Long" in connection with the sale of hooks and eyes, and especially hooks and eyes in direct or colorable imitation of the plaintiffs' hooks and eyes, upon the ground that the name "De Long," in connection with the words "Hook and Eye," constitutes a fraud upon the plaintiffs, and was adopted and continued in use for the purpose of enabling the defendant to avail itself of the established reputation of the plaintiffs' hooks and eyes, which are known in the trade and to consumers as the "De Long Hook and

Eye." If these grounds are supported, then the plaintiffs are certainly entitled to some form of relief; and, while it is not my purpose to dwell at length upon the testimony, there are certain facts so clearly proved or admitted as to be placed beyond controversy, and I shall endeavor, as far as possible, to confine myself to such.

It appears that some 40 years ago there was a hook having the shank or bill composed of three wires, the center one being bent forward and backward to accomplish the purpose of a spring, terminating before reaching the bend forming the loop. This is in many respects like the hook manufactured by both plaintiffs and defendant, its particular resemblance being in what has been designated by the plaintiffs as the "hump." It does not seem to have been extensively used. Some 20 years ago another hook, called the "Eagle Talon," with some of the features of the hook just described, appeared; and how extensive was its use is not evident, though it was shown that for more than 10 years it has been neither manufactured nor sold on the market. Apart from these, the form of hooks and eyes in common use were known as the "Swan Bill," of which there were a variety of patterns, all having the same general structure of a straight bill or shank bent upwards in the form of a loop or hook. In the color of hooks and eyes, those used were principally black and white, and in the carding for placing them upon the market there was little variety; the color and manner in vogue having been practically continued for 40 years prior to the advent of the plaintiffs' hooks and eyes, which appeared upon the market in the year 1889. That these hooks differed essentially from what had preceded them, in coloring and manner of carding, and in the claimed improvement, is abundantly established. From the beginning—whether from the change in fashion from buttons to hooks and eyes, or, as claimed by plaintiffs, as the result of the improvement in the latter, or from both causes, is immaterial—there was a large and steadily increasing demand for plaintiffs' goods, so that from a business of $12,000 in 1890 it had risen to $450,000 in 1893. And that a great deal of time, energy, and money were expended in pushing the plaintiffs' business, and that judicious and extensive advertising was done, are not seriously disputed. From the outset the plaintiffs gave to their goods the title "De Long," and adopted and registered that word as a trade-mark. It is insisted by the defendant that such registration was illegal, upon the ground that a name cannot be registered. But it is not necessary that I should go into that question, the fact appearing that the registration was accepted by the proper office, and the name "De Long" adopted as a trade-mark; and whether this was one secured by law, or merely a common-law trade-mark, acquired through use in connection with the article manufactured by the plaintiffs, the result of an unlawful appropriation of or interference therewith by the defendant would be practically the same, so far as the legal rights of the parties are concerned. While plaintiffs were so engaged in building up this business, one Oscar A. De Long was employed as a buyer in the notion department of a dry-goods house in this city, and, as such, bought and sold hooks and eyes for his em-

ployers. Among others, he had purchased some of plaintiffs. On the occasion of one of such purchases, in an interview with one of the plaintiffs, the similarity in their names was discussed between them, as well as the merits of the hook, which Oscar A. De Long referred to as a valuable thing. And, no doubt attracted by the growth in the hook and eye business, Oscar A. De Long says that in the summer of 1892 he worked at improving the hooks and eyes then on the market; and, after hitting upon the hook now sold by the defendant, he sought capital with which to start in business, never up to that time having been in business on his own account. As the result, he, with two others, in February, 1893, organized the defendant corporation, to which they gave the name of "De Long Hook & Eye Company," and thereafter commenced to manufacture and sell their hooks and eyes, in which business they have since continued in competition with the plaintiffs.

There can be no question but that, at the time this company was formed with this title, Oscar A. De Long, who had become familiar with the plaintiffs' goods, and knew that they were known on the market as the "De Long Hook and Eye," and who was impressed with the value of the name "De Long" as a trade-mark, deliberately selected the title of the defendant company. That this was done with an intention to benefit the defendant and injure the plaintiffs is clearly inferable, not only from the adoption of the name of the defendant company, but by the course pursued in the management of its business, and of the placing upon the market of its goods in competition with the plaintiffs. Thus the hook itself is very similar, and it is only upon a careful examination that one can discover the differences. So in respect to the way in which the hooks were put up, the variety in colors, and the manner of carding, without being exactly alike, they are so very similar as to render the inference improbable that this was the work of chance, and not the result of a design to simulate and follow the plaintiff's business devices, and by such means to enter upon an unfair competition, by taking advantage with the public of the reputation acquired for the plaintiffs' goods, with a view of increasing the sales of the defendant's own goods. What was said in the case of Fischer v. Blank, 138 N. Y. 252, 33 N. E. 1040, is here applicable:

"It must be admitted that there is no single point of resemblance or imitation which would, of itself, be regarded as adequate grounds for the grant of equitable relief. Form alone would not be sufficient, nor size nor color, nor the general decoration of the panels, nor disks of the same size and color arranged in the same way, nor a label of the same shape and color attached to the same part, nor the use of the same name to designate the kind or quality of tea. Each one of these distinguishing features might be separately used, and no harm result. But when all or a number of them are combined in a single package, and so arranged and exhibited that when they strike the eye of the intending purchaser, possessed of ordinary intelligence and judgment, the false impression is likely to be produced that the goods of the plaintiff are offered, it is the province of equity to interfere, for the protection of the purchasing public as well as of the plaintiffs, and for the suppression of unfair and dishonest competition. The true test, we think, is whether the resemblance is such that it is calculated to deceive, and does in fact deceive, the ordinary buyer, making his purchases under the ordinary conditions which prevail in the conduct of the particular traffic to which the controversy relates."

So, in the case at bar, though none of the particular acts complained of, except one, if separately analyzed and considered, could be regarded as such an imitation or simulation of the plaintiffs' methods as would entitle them to relief, yet, when taken together, they are potent factors, leading to the inference that the defendant intended to enter upon an unfair competition with the plaintiffs. Such inference, coupled with the fact of the selection of a name for the defendant corporation so similar to the one under which the plaintiffs' goods were known and sold, entitles the plaintiffs to relief against the injury that could be thus inflicted upon their business, and the deception that might thus be practiced upon the public.

It has been many times held that the courts will not enjoin persons from using their own name in their own business, even though by such use they may injure a business before that time carried on by one of the same name, and for the reasons given, and frequently quoted, in the leading case of Meneely v. Meneely, 62 N. Y. 427. And though in that case it was held that every man has the absolute right to use his own name in his own business, even though he may thereby interfere with and injure the business of another bearing the same name, he can only so use his own name "provided he does not resort to any artifice or contrivance for the purpose of producing the impression that the establishments are identical," or where the only confusion created is that which results from the similarity of the names. The right, however, of one to use his own name in his own business, is something very different and distinct from the lending or giving of his name to a corporation for the purpose of engaging in a business which has been conducted by others under precisely the same name. A person comes naturally by his name from his parents, and it is a thing personal to himself, which in truth and justice he has the right to use, provided its use is not coupled with any acts or artifices calculated to produce deception or confusion in the public mind between him and some other person, to the injury of the latter and the public. The name given to a corporation is an artificial and impersonal thing, which can be selected from an entire vocabulary of names; and the difference between using a name so selected, identical with that under which others do business, and the case of the use by one of his own name in his own business, seems to me clear and manifest. To say that one has the right to select his own name as the designation of a corporation is but another way of stating that he has a right to select any title from among the whole range of names; but it is not equivalent to a statement that he can give his own name to a corporation with a view to making it similar to that employed by other persons in the same business, to their or the public's injury. The defendant refers to cases where the name given to a new corporation was that of a person whose name was similar to that of an existing company, such as Scott Stamp & Coin Co. v. J. W. Scott Co., 58 N. Y. Super. Ct. 379, 15 N. Y. Supp. 325; Employers' Liability Assur. Corp. v. Employers' Liability Ins. Co., 24 Abb. N. C. 368, 10 N. Y. Supp. 845; Higgins Co. v. Higgins Soap Co., 71 Hun, 101, 24 N. Y. Supp. 801,—wherein the right to enjoin the name or its use was denied. These

cases, upon an examination, will be found to differ in many essential particulars from the present one, notably in the fact that the parties sought to be restrained, and who had formed the new corporation, had been originally connected with, and in many instances the prime movers in, the old firm, and had been as instrumental in making the name valuable as any other members of the old firm, and had as much right to enjoy the popularity and commercial value of the name as any of the other members of the firm. It was found, however, in these cases, as a fact, that there was no attempt to deceive, and no tendency to deceive, the public by the use of the names employed. This case, however, is readily distinguishable from those cited, in that here Oscar A. De Long had never been, up to the time of entering into this business, anything but a clerk, nor had he done aught to render the name of "De Long," in connection with the hook and eye business, valuable as a trade-mark. The probability of confusion in the public mind (an element always to be considered) in those cases and this was entirely different. There can be no question but that the use of the name "De Long Hook & Eye Company" in connection with the business conducted by the defendant is calculated, not only to deceive the public, but to result in confusing the identity of the two establishments. This is apparent, not only from the names used, but from the testimony in the case, and from none more clearly than that given by Oscar A. De Long, who testified that plaintiffs' goods were known in the market as the "De Long Hook and Eye," and that, although the name of the defendant company, as makers of the hook invented by him, was applied thereto, yet, to prevent confusion arising from such use, he changed such words upon the cards and packages of defendant's goods, and substituted therefor a statement that the hooks and eyes of the defendant were "Oscar A. De Long's Improved." It is not necessary to comment upon the fact that, as he had never made but one hook, it was not a correct statement affixed to the cards and packages that such hook was an improved De Long hook. The use of such a word as "improved" in connection with the name, where no such improvement had been made, but again emphasizes the fact that there was a studied effort to identify such hooks with those for which the plaintiffs had created a demand on the market under the name of the "De Long Hook and Eye." This witness was frank enough in his statements upon the stand to point out the chances of confusion in some respects when the defendant's goods were put in competition with those of the plaintiffs, and told of his efforts to remedy this by discarding certain similar features, particularly the substituting, instead of the name "De Long Hook & Eye Company" as makers, the statement that they were "Oscar A. De Long's Improved." There is no objection to the defendant designating the hooks sold by it as the "Oscar A. De Long Hook," because that would be a correct statement and a proper use of his name in connection with the business conducted by the defendant corporation. But, such use of the word "improved" by the defendant being a misrepresentation, it should be discontinued. Nor can there be any exception taken to his effort to have defendant's goods be-

come known in the market as the "Perfect Hook and Eye." But there is a clear equitable right secured by the plaintiffs against the defendant corporation being permitted to benefit itself, at the expense of the plaintiffs, by appropriating and applying to its goods the plaintiffs' trade-mark, "De Long Hook and Eye."

Though I have examined the very able argument presented by the counsel for the defendant, and their citation of cases, I have felt that it was unnecessary to comment upon all of them, because to do so would exceed the proper limits of this memorandum, and serve no useful purpose. The general principle is well settled that the grounds upon which infringements of trade-marks are enjoined are (1) injury to the public, by leading them to buy something that they did not intend to buy; and (2) injury to the owner of the trade-mark, by diversion of his trade into other channels. Whether either of these requirements is present in a particular case must be determined by the evidence in that case, and, except as illustrations of the principles, prior adjudged cases rarely furnish support to the questions presented; and this for the reason, well expressed in Fischer v. Blank, 138 N. Y. 252, 33 N. E. 1040, that "no inflexible rule can be laid down. Each case must, in a measure, be a law unto itself." If, however, cases are to be resorted to, the one that more nearly resembles this upon many of the questions raised is that of Massam v. Cattle-Food Co., 14 Ch. Div. 748, 42 Law T. (N. S.) 851. In that case one Joseph Thorley for many years manufactured and sold extensively an article called "Thorley's Food for Cattle," made according to a receipt communicated to him, and not known to the public, and down to his death he was the only person that made it. His executors continued the business. Shortly after his death a company was formed by other persons under the name of "J. W. Thorley's Cattle-Food Company," in which J. W. Thorley, a brother of Joseph Thorley, took a one-shilling share. J. W. Thorley had been employed by Joseph Thorley, and knew the secret of manufacture, and was employed by the company to conduct it. The company sold the same article under the name of "Thorley's Food for Cattle." Held, that the company were not at liberty to use the name "Thorley's Food for Cattle," unless they took such precautions as would prevent purchasers from supposing that the article sold by them was manufactured at the original establishment of Joseph Thorley. In this the cases bearing upon the right and power of the court to enjoin a corporation are collated and discussed, and, although the corporation itself was not enjoined, the manner of using its name so as to produce confusion of its identity with that of the plaintiff's firm was restrained. The enjoining of the defendant corporation from using its own name, particularly where, as in this case, it is a foreign corporation, always presents a serious question as to the power to suspend the functions of the corporation, and to accomplish by injunction practically the same result as would ensue from a dissolution. It is not necessary in this case to go to the extent of preventing the defendant from doing business altogether, and there is abundant authority for restraining the corporation in the manner in which it shall use its name; that of Massam v. Cattle-Food Co.,

and the cases therein cited, being sufficient to show that this power has been frequently exercised. My conclusion, therefore, is that the defendant should be enjoined from in any way using, in connection with placing upon the market or selling its goods, the name of the "De Long Hook & Eye Company." Judgment accordingly for plaintiffs, with costs, and an allowance to be fixed.