## COCA–COLA CO. v. NASHVILLE SYRUP CO.

(District Court, D. Tennessee. July 8, 1912.)

No. 3,676.

1. TRADE-MARKS AND TRADE-NAMES (§ 45*)—REGISTRATION—EFFECT.

Complainant, having had the actual and exclusive use of the mark "Coca-Cola" as a trade-mark in interstate commerce for 10 years prior to Act Cong. Feb. 20, 1905, c. 592, 33 Stat. 724 (U. S. Comp. St. Supp. 1911, p. 1459), and having registered such mark as authorized by section 5 of such act, obtained the exclusive right to the use of the word as a statutory trade-mark.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 53; Dec. Dig. § 45.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 45*)—REGISTERED MARK—RIGHT TO USE—EXTENT.

Act Cong. Feb. 20, 1905, c. 592, 33 Stat. 724 (U. S. Comp. St. Supp. 1911, p. 1459), provides for the registration of trade-marks, and (§ 5) authorizes registration of names used by the applicant and his predecessors in interstate commerce for 10 years prior to the passage of the act, etc., declaring that a mark by which the goods of the owner of the mark may be distinguished from other goods of the same class may be admitted to registration as a trade-mark. *Held*, that such provision necessarily implied that the mark, when registered, should constitute a trade-mark, which is defined by section 29 as including any mark which is entitled to registration under the terms of the act, so that, where complainant, having used the word or words "Coca-Cola" as a trade-mark in interstate commerce for more than 10 years prior to the passage of such act, and duly caused the same to be registered, complainant's mark was not limited to the script in which the word or words "Coca-Cola" were written in connection with complainant's product, either in the hyphenated or unhyphenated form, but extended to the use of the words themselves in any form in connection with the sale of a similar article.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 53; Dec. Dig § 45.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 59*)—INFRINGEMENT.

Complainant's statutory trade-mark in the word "Coca-Cola" was infringed by defendant's use of the name "Coca Cola" printed on its labels, in unhyphenated form and in different type, accompanied by the word "Fletcher's," attached to a similar compound sold in competition with complainant's product.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 68–72; Dec. Dig. § 59.*]

4. TRADE-MARKS AND TRADE-NAMES (§ 57*)—INFRINGEMENT—DUPLICITY.

Proof of duplicity or exact imitation is not necessary to establish infringement of a trade-mark.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 65; Dec. Dig. § 57.*]

5. TRADE-MARKS AND TRADE-NAMES (§ 97*)—INFRINGEMENT—RELIEF.

Where complainant established infringement of the trade-mark "Coca-Cola" by defendant's use of a similar name attached to a similar product. complainant was entitled to a permanent injunction restraining the continuance of the infringement.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 110, 111; Dec. Dig. § 97.*]

6. WORDS AND PHRASES—"COCA-COLA."

"Coca-Cola" is a compound, which among many ingredients contains some of the extract of coca, omitting cocaine, its most characteristic

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ingredient, and some of the ingredients of the extract of cola, including chiefly caffeine, which, while an important ingredient of the extract of cola, is not characteristic of it in any distinctive sense, but is also found in extracts from coffee beans and tea leaves.

In Equity. Suit by the Coca-Cola Company against the Nashville Syrup Company. Decree for complainant.

See, also, 200 Fed. 153.

Candler, Thomson & Hirsch, of Atlanta, Ga., and Pritchard & Sizer and Chambliss & Chambliss, all of Chattanooga, Tenn., for plaintiff.

Perkins Baxter, E. J. Smith, John R. Aust, and W. R. Chambers, all of Nashville, Tenn., for defendant.

### Memorandum Opinion on Pleadings and Proof.

SANFORD, District Judge. The affidavits used on the application for a preliminary injunction have been by agreement used as evidence on this hearing and the evidence is, therefore, with a slight addition, the same as that considered in determining said preliminary applicaton.

[1, 6] 1. After careful consideration of the argument of counsel and the briefs filed on this hearing, I have again reached the same conclusion as on the preliminary hearing, and must now conclude, for the reasons stated in the memorandum opinion of April 4, 1912 (200 Fed. 153), on said preliminary hearing, that the complainant has established a valid statutory trade-mark in the word or words "Coca-Cola" by evidence showing the actual and exclusive use of this mark by the complainant and its predecessors, in interstate commerce, for ten years preceding the passage of the Act of February 20, 1905, c. 592 (33 Stat. 724, 10 F. S. A. 408 [U. S. Comp. St. Supp. 1911, p. 1459]), and the registration of such mark by the complainant on October 31, 1905, in accordance with the provisions of section 5 of said Act. In reaching this conclusion I do not find it necessary to determine whether or not the compound name Coca-Cola is a descriptive name, or merely suggestive of the ingredients, or purely arbitrary and fanciful as applied to beverage syrups, or whether or not it could have been originally subject to appropriation by the complainant as a valid trade-mark. However, I think it clear that even if the separate words "Coca" and "Cola" have a distinct meaning, indicating the extract of coca and the extract of cola as distinguished from the cola nut and the coca leaf, the compound word Coca-Cola, consisting of two nouns, cannot be properly said to be an exact description of the syrup manufactured by either the complainant or the defendant, since neither of these syrups is a compound composed either of the coca leaf or the cola nut, or of the extracts of cola and coca, but each is a compound, which among many ingredients contains some of the ingredients of the extract of coca, omitting cocaine, its most characteristic ingredient, and some of the ingredients of the extract of cola, including chiefly caffeine, which, while an important ingredient of the extract of cola is not characteristic of the extract of cola in any distinctive sense, but is also found in perhaps a greater degree in extracts from coffee beans and tea leaves; and, on the other hand, each

of these syrups contains some ingredients not found in either cola nuts or coca leaves or the extracts of coca or cola.

[2] 2. The defendant, however, earnestly contends that the effect of section 5 of the Act of 1905 is only to give validity to the registration of the actual mark which has been previously used as a trade-mark, and that the sole right that the complainant has thereby acquired is the right to use the "mark" Coca-Cola, "meaning," as stated in its brief, "the script in which the word or words Coca-Cola is written, either in a hyphenated or unhyphenated form"; in other words, that the complainant by the registration of this mark under the Act of 1905 acquired merely the right to the exclusive use of the mark Coca-Cola in its script form and not a trade-mark in the use of the name Coca-Cola when otherwise written.

While this question presented is not free from some doubt, I am of opinion that this section, when properly construed, does not confer merely the right to the use of the registered mark as a mark in the precise form in which it has been previously used, but that by registration of the mark under section 5 of the Act, after ten years prior exclusive use, such mark is thereafter given effect as a valid statutory trade-mark in all respects, entitling it to protection as any other statutory trade-mark, and not merely to protection as a mark in the precise form of its former use.

Section five of the Act of 1905 clearly contemplates that, except in the prohibited cases, a "mark by which the goods of the owner of the mark may be distinguished from other goods of the same class" may be admitted to "registration *as a trade-mark.*" This necessarily implies that the "mark" when registered shall constitute a "trade-mark." And section 29 specifically defines the term "trade-mark" as including "any mark which is entitled to registration" under the terms of the Act.

In Thaddeus Davids Co. v. Davids (C. C. A. 2) 178 Fed. 801, 804, 102 C. C. A. 249, 252, the Circuit Court of Appeals said, referring to the effect of section 5 of the Act of 1905:

"The Act makes a mark actually and exclusively used for the requisite period entitled to registration as a trade-mark. And if it is entitled to registration it is entitled to protection. We are unable to appreciate the distinction sought to be drawn by the defendant between the right to registration of a trade-mark and the right to protect it."

It follows from this language, said Judge Hough, in Thaddeus Davids Co. v. Davids (C. C.) 190 Fed. 285, 286; s. c., 1 Trademark Reporter, 215, 216:

"That since the 'mark' may be registered as a trade-mark and is entitled to protection, it is entitled to protection as a trade-mark, which is equivalent to saying that it becomes a valid trade-mark by registration."

And so in American Lead Pencil Co. v. Gottlieb (C. C.) 181 Fed. 178, it was held that although the name "Beats All" was a descriptive phrase, not subject to appropriation as a trade-mark, prior to the Act of 1905, the subsequent registration of such mark after ten years actual and exclusive use as a trade-mark, made these words available as a proper trade-mark, and entitled the complainant to an injunction

against infringement by a competitor by the use of the word "Knox-all" as a trade-mark.

In the present case I think it clear that the "mark" which had been in prior use by the complainant for ten years, and which became a valid trade-mark by registration under the Act of 1905, was the compound word or words constituting the name "Coca-Cola," and not merely the particular script form in which this word was used as a label. In its application, registered January 31, 1893, the complainant applied for a trade-mark on "the word or words 'Coca-Cola,'" and in its application, registered October 1, 1905, it again described the trade-mark as consisting "of the words Coca-Cola," without limiting the trade-mark in either application to any particular form of script or use. The term trade-mark "generally speaking, means a distinctive mark of authenticity," and "may consist in any symbol or form of words." Elgin Watch Co. v. Illinois Watch Co., 179 U. S. 663, 673, 21 Sup. Ct. 270, 273 (45 L. Ed. 365); Standard Paint Co. v. Asphalt Co., 220 U. S. 446, 453, 31 Sup. Ct. 456, 457 (55 L. Ed. 536). And a particular combination of words designating certain merchandise may be protected as a trade-mark. Menendez v. Holt, 128 U. S. 514, 9 Sup. Ct. 143, 32 L. Ed. 526. And so in the present case, I am of opinion that the mark which the complainant had used and which it registered under the Act of 1905, consists, as shown by its two applications, in its essence, in the particular combination or form of words constituting the name "Coca-Cola," and not in any particular script form of this name.

[3] 3. The complainant therefore having, in my opinion, a valid statutory trade-mark in the word "Coca-Cola," I am constrained to conclude that this trade-mark has been infringed by the defendant in the use of its labels, caps, etc., having the name Coca-Cola printed thereon, although not in script and in an unhyphenated form, and accompanied by the word "Fletcher's" and containing other printed matter differing from that contained in the complainant's label, and in the use of this compound word Coca-Cola in its advertisements as a part of the name of the syrup which it has manufactured; and that the complainant is therefore entitled to a reference for an accounting of the damages which it has sustained by such infringement and to a permanent injunction restraining further infringement.

[4] This conclusion is, in my opinion, in harmony with the current of authority upon the question of infringement of a trade-mark. When a name is used as a trade-mark, the use of a similar name likely to deceive the purchasing public is an infringement which will be enjoined as a violation of the trade-mark, though the defendant's label is in other respects different. McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828; Battle v. Finlay (C. C.) 45 Fed. 796, adopted and approved in Battle v. Finlay (C. C.) 50 Fed. 106. Duplicity or exact imitation is not necessary to the infringement of a trade-mark. Eagle White Lead Co. v. Pflugh (C. C.) 180 Fed. 579. Thus when the complainant has acquired a trade-mark in the name "Hunyadi" for bitter waters commonly sold under the name "Hunyadi Janos," this trade-mark is infringed by the defendant by the use of the name "Hunyadi

Matyas." Saxlehner v. Eisner Co., 179 U. S. 19, 30, 21 Sup. Ct. 7, 45 L. Ed. 60. So the statutory trade-mark "Beats All" is infringed by the use of the name "Knoxall." American Lead Pencil Co. v. Gottlieb, supra. And in 2 Joyce on Injunctions, 2756, it is said:

"Where a trade-mark consists of a word, it may be used by the manufacturer who has appropriated it in any style or print or on any form of label, and its use by another in any form is unlawful. In such a case the goods become known by the name or word by which they have been designated, and not merely by the manner or fashion in which the word is printed or written, or its accessory circumstances and the unlawful use of the name or word in any form may be enjoined."

See also Hutchinson v. Covert (C. C.) 51 Fed. 832; American Tin Plate Co. v. Roller Mill Co. (C. C.) 158 Fed. 690; Gaines v. Leslie, 25 Misc. Rep. 20, 54 N. Y. Supp. 421; and Coca-Cola Co. v. Deacon Brown Bottling Co. (U. S. District Court, West Dist. Ala.) 200 Fed. 105.

The conclusion that the complainant's trade-mark in the word "Coca-Cola" is infringed by the defendant by the use of this word in its unhyphenated form, as part of the name of its syrup, is not, as I view it, necessarily in conflict with the opinion in Thaddeus Davids Co. v. Davids (C. C. A. 2) 192 Fed. 915, in which, as I find since writing my former memorandum opinion, the Circuit Court of Appeals reversed the decree of the Circuit Court in 190 Fed. 285, and held, Judge Noyes dissenting, that the complainant's statutory trade-mark in the single word "Davids" as applied to inks, which had been upheld by the court in 178 Fed. 801, was not infringed by the use of the name of one of the defendants, "Courtland I. Davids," on the top of the defendant's labels or the use of the name "Davids Manufacturing Company," under which the defendants were trading, at the bottom of their label. While this conclusion seems to have been largely reached as a result of the concession made by the complainant that the defendant Davids had the right to use his own name on the labels, though not at the top, the material distinction between the Davids Case and the case at bar is, I think, this: that in the Davids Case the defendants were not using the word "Davids," in which the complainant had a statutory trade-mark, as the name of their inks, or as a part of such name—it not appearing that their goods were labeled "Davids" inks—but were merely, under whatever name their inks were sold, placing on the labels their own names as indicating, apparently, the names of the manufacturers. In the present case, however, the defendant has incorporated in the name of its compound, as appearing on its labels and elsewhere, the very mark, to-wit, the word "Coca-Cola" in which complainant has acquired a valid trade-mark, and such incorporation, as part of the name of the defendant's syrups, of this very mark in which complainant has acquired a statutory trademark must, I think, be deemed a violation of the complainant's trademark in this word, even though the complainant's trade-mark should be deemed limited, in accordance with the doctrine of the Davids Case, to the very word "Coca-Cola" itself. In the Davids Case the defendants had apparently not used on their labels the complainant's trademark "Davids" as a part of the name of their inks; hence I do not

think that case can be properly regarded as supporting the proposition that where the complainant has acquired a valid trade-mark in a mark, consisting of a word used as the name of certain goods, the defendant can escape infringement when it uses substantially this identical word itself as a part of the name of its own goods and incorporates this very word, with merely the omission of a hyphen, in the name of its goods, upon its labels and elsewhere, or that, if it is to be so regarded, it can be reconciled with the decision of the Supreme Court in Saxlehner v. Eisner Co., supra.

[5] 5. Without determining the questions in this case arising in reference to the alleged unfair competition, irrespective of the question of trade-mark, a decree will accordingly be entered adjudging the validity of complainant's trade-mark in accordance with this opinion, referring the cause to a special master for the ascertainment of damages and permanently enjoining the continued infringement thereof.