### COCA-COLA CO. v. STEVENSON et al.

(District Court, S. D. Illinois, S. D. January Term, 1920.)

No. 47.

1. **Trade-marks and trade-names and unfair competition ⬥18—"Coca-Cola" valid trade-mark.**

   Coca-Cola Company *held* to have a valid trade-mark in the name "Coca-Cola" as applied to the beverage widely known by that name.

2. **Trade-marks and trade-names and unfair competition ⬥79—Equity has jurisdiction to grant appropriate relief against infringement.**

   Equity has jurisdiction to grant appropriate relief against infringement of a valid trade-mark and to that end may compel the Secretary of State of a state to cancel the registration under a state statute of an infringing trade-mark which constitutes a cloud on the title of the true owner of the trade-mark.

3. **Trade-marks and trade-names and unfair competition ⬥70(3)—"Coca-Cola" held infringed.**

   Labels for a beverage, registered under a state trade-mark statute containing the words "a genuine Coca and Cola flavor," printed in four horizontal lines, "Coca and Cola" constituting one line with the words "Coca" and "Cola" in large colored letters and the word "and" in small type so that it would readily be mistaken for complainant's trade-mark "Coca-Cola," *held* an infringement of such trade-mark.

4. **Trade-marks and trade-names and unfair competition ⬥45—Registration under state statute confers no exclusive rights.**

   The trade-mark statute of Illinois (Hurd's Rev. St. 1919, c. 140) does not purport to confer any exclusive rights, and the registration of trade-marks thereunder has no effect in giving them the quality of trade-marks if not already such.

5. **Trade-marks and trade-names and unfair competition ⬥42—State statutes are in affirmance of common-law rights.**

   State statutes providing for registration of trade-marks are in affirmance of the common law, and remedies given by such statutes are either declaratory or are cumulative and additional to those recognized and applied by the common law.

6. **Trade-marks and trade-names and unfair competition ⬥45½, New, vol. 7A Key-No. Series—Owner entitled to cancellation of fraudulent registration of infringing trade-marks.**

   Where defendant by false and fraudulent representations procured the registration with the Secretary of State of Illinois under the state statute, knowing that they were infringements on complainant's trade-mark, complainant *held* entitled to join the Secretary of State with defendant in a suit in equity for the purpose of establishing its rights and procuring the cancellation of such registrations.

7. **Trade-marks and trade-names and unfair competition ⬥41—Trade-mark rights not limited by state statute.**

   A valid trade-mark, long used in interstate commerce, cannot be limited by denying it effect in a state because not registered under a state statute permitting such registration.

In Equity. Suit by the Coca-Cola Company of Delaware against Lewis G. Stevenson and others. Decree for complainant.

The Coca-Cola Company of Georgia, substituted pending the action by the Coca-Cola Company of Delaware, sued to enjoin the defendants, John D. Fletcher, a citizen of the state of Texas, and the National Carbonating Syrup

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Company, a Delaware corporation, doing business at the city of Evansville, Ind., from further infringing upon the trade-mark of the plaintiff; also, seeking an order directing the Secretary of State of the State of Illinois, Lewis G. Stevenson, and his successor Louis L. Emmerson, to cancel the registration of the purported trade-marks of defendants Fletcher and the National Carbonating Syrup Company, on the ground that the registration was falsely and fraudulently procured.

The plaintiff and its predecessors had been engaged in the manufacture of a syrup for an aerated beverage and had caused the beverage itself to be bottled under direction and supervision by the plaintiff known as "Coca-Cola," since 1886. A vast sum of money had been expended in advertising the trade-mark "Coca-Cola" as indicating plaintiff's syrup and the aerated beverage bottled therefrom. In the year 1916, $1,943,178.40 had been expended in bringing the syrup and the beverage manufactured and sold under the trade-mark "Coca-Cola" to the attention of the trade in interstate commerce. The production of the syrup increased from 25 gallons in 1886 very rapidly until the annual output had, in 1916, reached 9,715,892 gallons; the trade-mark "Coca-Cola" had become favorably and familiarly known everywhere; and the rights of the plaintiff were repeatedly affirmed by adjudications in the United States courts. The trade-mark was the subject-matter of two registrations in the United States Patent Office and prior thereto and since had been used by the plaintiff in interstate commerce.

On March 16, 1916, plaintiff made application to the Secretary of State of Illinois for the registration of its trade-mark "Coca-Cola" under the provisions of the Revised Statutes of Illinois (Chapter 140), fully complying with all the terms and provisions of that statute. The application, however, was rejected by the Secretary of State because of prior registrations by defendant John D. Fletcher, as follows:

"John D. Fletcher's Coca and Cola Carbonating Syrup, Chicago, Illinois," the same being inclosed in a red circular band and registered July 24, 1914. Also, the words,

"John D. Fletcher's Carbonated Syrup, A Genuine Coca and Cola Flavor," the same being inclosed in a broad corrugated wheel or circular band of blue and registered October 6, 1914. Also,

"Tri-Pure. A Genuine Coca and Cola flavor. 7 Fl. Oz. Purest Drink in the World"—inclosed in a broad corrugated wheel or circular band and registered March 10, 1916. Also,

"Trico. Genuine Coca and Cola Flavor. 6½ Fl. Oz. Purest Drink in the World"—inclosed in a red corrugated wheel or circular band and registered September 25, 1916; all of said registrations being in the office of the Secretary of State of Illinois.

And the registrations of John D. Fletcher were permitted to remain on record in the office of the Secretary of State, thereby becoming clouds upon the title and the exclusive right of the plaintiff to the enjoyment of its trade-mark in Illinois.

Defendant Fletcher was formerly a resident of Nashville, Tenn., and on or about February 15, 1911, organized a corporation under the laws of Tennessee, under the name of Nashville Syrup Company. He was president, general manager, and one of the principal stockholders of the company. Prior to the registrations in Illinois, a bill of complaint was filed in the Circuit Court of the United States for the Middle District of Tennessee by the plaintiff against the Nashville Syrup Company, praying an injunction against the defendant for infringing plaintiff's trade-mark "Coca-Cola." Upon a hearing upon the pleadings in the case, on July 29, 1912, a final decree was entered perpetually enjoining the Nashville Syrup Company, its agent, servants or employes, from further infringing plaintiff's trade-mark. An appeal was prosecuted from the decree to the Circuit Court of Appeals for the Sixth Circuit, and on June 13, 1914, the decree of the Circuit Court was affirmed. Coca Cola Co. v. Nashville Syrup Co. (D. C.) 200 Fed. 157; Nashville Syrup Co. v. Coca Cola Co., 215 Fed. 527, 132 C. C. A. 39, Ann. Cas. 1915B, 358.

Fletcher knew of the suit and the adjudication in the United State Circuit Court in Tennessee and aided in the defense interposed to the bill. At the

time he filed his several applications for registration of trade-marks in Illinois, defendant Fletcher knew that the trade-mark "Coca-Cola" belonged to the plaintiff and referred to and meant to the trade plaintiff's syrup and the nonalcoholic beverages made therefrom under plaintiff's supervision, and that the use of the alleged trade-marks by Fletcher was unlawful and his acts and representations in procuring the registrations of his alleged trade-marks in Illinois, embodying the trade-mark "Coca-Cola" in various forms, was a fraud upon plaintiff's rights.

The National Carbonating Syrup Company's rights to the trade-marks registered in Illinois were acquired through defendant Fletcher.

The applications of Fletcher for the registration of the trade-marks in question with the Secretary of State of Illinois were in due form of law. The statute authorizing the registration of trade-marks, labels, etc., required the applicant to make a showing under oath that he had the right to the use of the trade-marks, the registration of which he sought, and that no other person, firm, organization, union, or corporation had the right to such use either in the identical form or in any such near resemblance thereto as might be calculated to deceive. In making this representation required by the statute, defendant Fletcher disregarded plaintiff's rights to the trade-mark "Coca-Cola." The registrations procured were procured by reason of the representations made, and upon a hearing the court found that the representations were untrue and fraudulent, and that they are a cloud upon the title to plaintiff's property.

It was contended upon the part of defendants Fletcher and National Carbonating Syrup Company that the plaintiff was without remedy in equity on the ground of unclean hands, for the reason that at one time, many years ago, it had been convicted of marketing a syrup that contained slight traces of ingredients offensive to the pure food laws, and citing, after submission, the opinion of the Circuit Court of Appeals for the Ninth Circuit in Koke Co. of America v. Coca Cola Co., 255 Fed. 894, 167 C. C. A. 214; that plaintiff had no trade-mark rights in the name "Coca-Cola" for either syrup or beverage; that the mark was appropriated by plaintiff for a beverage and never was applied; that it could have no common-law trade-mark because the name arose and was used to describe the ingredients in plaintiff's product, i. e., extracts of coca leaves and cola nuts, and being descriptive, even if registered by plaintiff under the Act of February 20, 1905, it would only remove it on the class of merchandise to which it had been appropriated by the declaration and actually used; the declaration appropriated the mark to the class known as beverages and as it was never used on beverages, the descriptive disability has never been removed; that whatever rights the plaintiff may have had in the trade-mark had become a nullity; that plaintiff's trade-mark never attained a secondary meaning as the name of plaintiff's product; that defendants have always acted in good faith; that their product is distinctively and truly flavored with coca and cola, which are common products of the soil; that defendants' product is Trico, and their trade-mark distinctive; that the state or any other sovereignty has the right to say how, when, and under what terms a mark may be used within the limits of that sovereignty; that plaintiff's product is not a beverage.

Defendant Secretary of State attacked the multifariousness of the bill.

Allen, Humphreys & Converse, of Springfield, Ill., and Frank F. Reed and Edward S. Rogers, both of Chicago, Ill., for plaintiff.

Graham & Graham, of Springfield, Ill., and Edward C. Henning, of Evansville, Ind., for defendants Fletcher and National Carbonating Syrup Co.

Andrew J. Brundage, Atty. Gen., of Illinois, and Clarence M. Boord, Asst. Atty. Gen., for defendant Secretary of State.

FITZHENRY, District Judge (after stating the facts as above). [1] The very recent decision of the Supreme Court in Coca-Cola Co. v.

Koke Co. of America et al., 254 U. S. 143, 41 S. Ct. 113, 65 L. Ed. ——, has conclusively disposed of the defense of "unclean hands" interposed by the defendants in this case, upon the authority of Koke Co. of America v. Coca-Cola Co., 255 Fed. 894, 167 C. C. A. 214 (C. C. A. 9th Cir.). While the exact question in that case is not presented here, yet the same principle is involved. It is claimed that none of the chemical elements suggested by the name "Coca-Cola" were in fact to be found in plaintiff's syrup, and therefore it was a fraud upon the public. The language of the Supreme Court in disposing of that case is especially apt here:

"The name [Coca-Cola] now characterizes a beverage to be had at almost any soda fountain. It means a single thing coming from a single source, and well known to the community. It hardly would be too much to say that the drink characterizes the name as much as the name the drink. In other words, 'Coca-Cola' probably means to most persons the plaintiff's familiar product to be had everywhere rather than a compound of particular substances. Although the fact did not appear in United States v. Coca-Cola Co., 241 U. S. 265, we see no reason to doubt that, as we have said, it has acquired a secondary meaning in which perhaps the product is more emphasized than the producer, but to which the producer is entitled."

This very recent decision of the United States Supreme Court settled many of the questions involved in this case. The opinion of the Circuit Court of Appeals of the Ninth Circuit which was reversed was submitted to this court for its consideration upon the issues raised here, by the personal and corporate defendants, upon the theory that the identical plaintiff in this case had been adjudicated in the Circuit Court of Appeals to be of such unclean hands that it should be denied all relief in equity. The opinion disposes of the question of ownership of the trade-mark and recognizes that it has acquired a secondary meaning in which perhaps the product is more emphasized than the producer, but to which the producer is entitled.

[2] It is well established that equity has jurisdiction to: (1) Cancel fraudulent instruments affecting titles; (2) to quiet title; (3) to remove a cloud on title; and (4) to enjoin clouding a title. If at the time of Fletcher's adoption and use of the trade-marks which he registered in Illinois the plaintiff had title to and was as far as possible, with this kind of property, in possession of the trade-mark "Coca-Cola," then any user or claim by another to that mark or a simulation thereof was such a wrong and trespass upon plaintiff's trade field, as to bring the question within the perview of equitable relief. 1 Storey's Equity, § 700; Coel v. Glos, 232 Ill. 142, 83 N. E. 529, 15 L. R. A. (N. S.) 413; Hemstreet v. Burdick, 90 Ill. 444; Glos v. Goodrich, 175 Ill. 20, 51 N. E. 643; Langlois v. Stewart, 156 Ill. 609, 41 N. E. 177; Bradley v. Bell, 142 Ala. 382, 38 South. 759; Grove v. Jennings, 46 Kan. 366, 26 Pac. 738; Hamilton v. Batlin, 8 Minn. 403 (Gil. 359) 83 Am. Dec. 787.

In a case of this character, where it is clear that the legal remedy in the premises, mandamus, is utterly inadequate to protect plaintiff's rights, equity has full jurisdiction over the Secretary of State to decree the plaintiff the relief to which it is entitled and to compel the Secretary of State to carry out the court's mandates by canceling any

wrongful registrations of the defendants which constitute a cloud upon plaintiff's title and to permit the registration of plaintiff's trade-mark. Greene v. L. & I. R. Co., 244 U. S. 499, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88; L. & N. R. Co. v. Bosworth (D. C.) 230 Fed. 191; Ill. Central R. Co. v. Bosworth (D. C.) 209 Fed. 465; Same v. Greene, 244 U. S. 555, 37 Sup. Ct. 697, 61 L. Ed. 1309; St. Louis & S. F. R. Co. v. Cross (C. C.) 171 Fed. 480; Harrison v. St. L. & S. F. Ry. Co., 232 U. S. 318, 34 Sup. Ct. 333, 58 L. Ed. 621, L. R. A. 1915F, 1187; Phil. Co. v. Stimson, 223 U. S. 605, 32 Sup. Ct. 340, 56 L. Ed. 570; Lane v. Watts, 234 U. S. 525, 34 Sup. Ct. 965, 58 L. Ed. 1440.

[3] In the trade-marks registered by defendant Fletcher and attached to his answer, Exhibit A contains the words "JOHN D. FLETCHER'S COCA and COLA Carbonating Syrup Chicago, Illinois." B contains the words "JOHN D. FLETCHER'S CARBONATING SYRUP A Genuine. Coca and Cola Flavor." C contains the words "TRIPURE PUREST DRINK IN THE WORLD A Genuine Coca and Cola Flavor. 7 Fl. Oz." D contains the words "TRICO PUREST DRINK IN THE WORLD Genuine Coca and Cola Flavor 6½ Fl. Oz." In Exhibit A the words "Coca" and "Cola" are in type about twice the size of the largest type in the label. The letters are outline type, printed in two colors, blue and red. In Exhibits B and C the words "A Genuine Coca and Cola Flavor" form four horizontal lines, the words "Coca and Cola" being the longest line in the center of the trade-mark, while the center of Exhibit D is arranged almost exactly the same as C, with the exception of the word "A," so that in all four of the registrations the catchy display line which would naturally be the first to attract the eye is "Coca and Cola." In Exhibit A the word "and" in the display line "Coca and Cola" is printed in type probably one-fourth as large as the type used in "Coca" and "Cola," so that the word "and" might readily be mistaken for the dash in plaintiff's trade-mark "Coca-Cola." All of the labels now claimed by defendant Fletcher as his trade-marks, and which were registered by him, display a manifest purpose on the part of the designer to attract the eye of and interest the public in the two words "Coca" and "Cola."

In the light of these facts, it is quite natural that the Secretary of State should have held, when the plaintiff endeavored to register its trade-mark, that it was so similar to those already registered as to require him to deny registration. There could be no better or more convincing evidence of the infringement than the official action of the Secretary of State upon plaintiff's application. The addition of the word "genuine" and the adding of the word "flavor" and the substitution of the word "and" for the dash in plaintiff's trade-mark do not relieve defendant Fletcher from his culpability as an infringer, but rather by the arrangement of the labels, the registration of which he procured, makes the conclusion the more irresistible that he clearly intended to appropriate to his own use the benefits of plaintiff's trade-mark in Illinois. Added words and their embellishment do not destroy property rights in a trade-mark. Coca Cola Co. v. Nashville Syrup Co. (D. C.) 200 Fed. 153–155, 200 Fed. 157–160, affirmed 215

Fed. 327, 132 C. C. A. 39; Coca-Cola Co. v. Am. Druggists' Syndicate (D. C.) 200 Fed. 107; Fuller v. Huff, 104 Fed. 141, 43 C. C. A. 453, 51 L. R. A. 332; De Long v. De Long Hook & Eye Co., 10 Misc. Rep. 577, 32 N. Y. Supp. 203; Clark Thread Co. v. Armitage, 74 Fed. 936, 21 C. C. A. 178; Beecham v. Jacobs, 221 U. S. 263, 31 Sup. Ct. 555, 55 L. Ed. 729; Menendez v. Holt, 128 U. S. 514, 9 Sup. Ct. 143, 32 L. Ed. 526.

Virtuous intentions cannot be attributed to defendant Fletcher in his infringement upon the plaintiff's rights. He personally procured the registrations; he is the president of the corporation defendant, National Carbonating Syrup Company, and he was the president, general manager, and one of the largest stockholders of the Nashville Syrup Company, which was enjoined from infringing upon the plaintiff's trade-mark by the decree of the United States Circuit Court for the Middle District of Tennessee (Coca Cola Co. v. Nashville Syrup Co [D. C.] 200 Fed. 153; 215 Fed. 327, 132 C. C. A. 39), and was one of the persons who come within the rule that an officer, director, or stockholder of a corporation is bound and estopped by judgment against the corporation, when he has full knowledge and participates in the defense (Hancock Natn'l Bank v. Farnum, 176 U. S. 640, 20 Sup. Ct. 506, 44 L. Ed. 619; Singer v. Hutchinson, 183 Ill. 606, 56 N. E. 388, 75 Am. St. Rep. 133; United States v. United States Shoe Machinery Co. [D. C.] 234 Fed. 127). So we conclude that in designing the trade-marks, the registration of which Fletcher procured, his purpose to use plaintiff's trade-mark was not only clear and deliberate, but with full knowledge of plaintiff's rights. The character of defense interposed strengthens this view, for it is contended, practically, that inasmuch as the trade-mark "Coca-Cola" was not registered, anybody could register it and that the first person to do so would be the legal owner thereof and entitled to its use. This, of course, is a mistaken view of the Illinois statute. Registration does not and cannot create or bestow the exclusive right to use a trade-mark, nor does the statute so provide.

[4] There is nothing in the Illinois statute requiring registration preliminary to a suit, or the making of the certificate anything more than evidence of adoption, nor does it provide that registration shall confer any exclusive right, nor is any means provided for the settling of contested priority claims in the office of the Secretary of State between two applicants. Where a similar statute of New York was under consideration, the Court of Appeals said:

"It may be observed, however, that the Legislature by this statute has not attempted to confer trade-mark rights, but merely to more effectively regulate existing common-law trade-marks and to afford an additional speedy remedy for the violation thereof, and to prevent fraud and imposition on the public, which are matters within the police power of the state." Prest-O-Lite Co. v. Ray, 162 App. Div. 62, 147 N. Y. Supp. 138.

Only the owner of a trade-mark has the right to register it. Defendant Fletcher must now be held to have known that the plaintiff here and its predecessors owned the trade-mark "Coca-Cola" by adoption and use since 1886, and this ownership and the rights of the plain-

tiff to it have been adjudicated so frequently in the federal and state courts that it has become a matter of such common knowledge as to make the citation of authorities entirely unnecessary.

In the light of this situation, it is not difficult for the court to conclude as to which of the contending parties judicial protection should be granted. Carroll & Son v. McIlvaine & Baldwin (C. C.) 171 Fed. 125.

Where it was contended that registration created rights, the Supreme Court of the United States said:

"This exclusive right was not created by the act of Congress, and does not now depend upon it for its enforcement. The whole system of trade-mark property and the civil remedies for its protection existed long anterior to that act, and have remained in full force since its passage." Trade-Mark Cases, 100 U. S. 82, 25 L. Ed. 550.

Registration cannot confer a title to a trade-mark, if some other individual has acquired a prior right by adoption and use; nor can it vest a title in the registrant as against another's common-law title. Carroll & Son v. McIlvaine & Baldwin (C. C.) 171 Fed. 125.

[5] The general rule adopted by the courts on this subject is that the state statutes providing for registration of trade-marks are in affirmance of the common law; that the remedies given by such statutes are either declaratory or are cumulative and additional to those recognized and applied by the common law. Trade-Mark Cases, 100 U. S. 82, 25 L. Ed. 550. The registering of defendant Fletcher's trade-marks with the Secretary of State has no effect in giving them the quality of trade-marks if not already such. Oakes v. St. Louis Candy Co., 146 Mo. 391, 48 S. W. 467.

Business good will and trade-marks indicative thereof are property rights and considered and treated as such. Hanover Star Milling Co. v. Metcalf, 240 U. S. 403, 36 Sup. Ct. 357, 60 L. Ed. 713. The plaintiff here and its predecessors had used the trade-mark "Coca-Cola" in interstate commerce since 1886 and had used it in connection with its business in intrastate commerce in Illinois for a great many years before the recording of defendant Fletcher's trade-marks with the Secretary of State. The good will of the public and the trade-mark indicative thereof in Illinois were plaintiff's property at the time of the filing of the trade-marks by Fletcher and were entitled to the protection which the law gives.

[6] Section 3 of the Trade-Marks Act of Illinois provides:

"Every such person, association or union that has heretofore adopted or used, or shall hereafter adopt or use, a * * * trade-mark * * * as provided in section 1 of this act shall file the same for record in the office of the Secretary of State, by leaving two copies * * * with said Secretary, and by filing therewith a sworn statement specifying the name or names of the person * * * on whose behalf such * * * trade-mark * * * shall be filed, the class of merchandise and particular description of the goods to which it has been or is intended to be appropriated; that the party so filing, or on whose behalf such * * * trade-mark * * * shall be filed, has the right to the use of the same, and that no other person, firm, association, union or corporation has the right to such use either in the identical form or in any such near resemblance thereto as may be calculated to deceive,

and that the fascimile copies or counterparts filed therewith are true and correct." Ill. R. S. c. 140, § 3, 6 J. & A. Ann. Stat. 6335.

Defendant Fletcher undoubtedly made the proof required by this statute, and in doing so he knew, by reason of the prior adjudication of plaintiff's trade-mark in Coca-Cola Co. v. Nashville Syrup Co. (D. C.) 200 Fed. 157, as well as by his experience and knowledge of plaintiff's business and trade-mark, evidenced by the manifest purpose of the design of the trade-marks, the registration of which he procured, the showing which he made to the Secretary of State in compliance with the statute was false and fraudulent.

There can be no question as to the right of the plaintiff even though a foreign corporation to enter a forum in the state of Illinois for the purpose of protecting its property rights (Peck Bros. & Co. v. Peck Bros. Co., 113 Fed. 291, 51 C. C. A. 251, 62 L. R. A. 81) ; nor that the Secretary of State is a proper party to plaintiff's bill, and that mandamus would be an inadequate remedy (People v. Rose, 219 Ill. 46, 76 N. E. 42; People v. Van Cleave, 183 Ill. 330, 55 N. E. 698, 47 L. R. A. 795; Bender v. Bender, 178 Ill. App. 203; International Committee of Y. M. C. A. v. Y. W. C. A., 194 Ill. 194, 62 N. E. 551, 56 L. R. A. 888). The Attorney General of Illinois on behalf of the Secretary of States presses the point of multifariousness. The bill comes clearly within Equity Rule 26 (198 Fed. xxv, 115 C. C. A. xxv).

The record shows that the Secretary of State was misled into recording Fletcher's trade-marks by reason of the false showing made in connection with the application. In other words, the joint effect of Fletcher's misconduct which resulted in the Secretary's official action based thereon constitute a cloud upon the title of plaintiff's property which equity will remove. Rule 26 (198 Fed. xxv, 115 C. C. A. xxv) does not drive the plaintiff into a circuity of actions, first, to resort to equity to establish its property rights over defendant Fletcher's claims and then to bring a separate action against the Secretary of State to cancel the illegal and unlawful registrations which constitute a cloud upon plaintiff's title and to procure the registration of plaintiff's trade-mark. Equity will avoid a multiplicity of suits.

The claim that "Genuine Coca and Cola Flavor" is truthfully descriptive of the flavor of defendant's product is disposed of by Coca Cola Co. v. Koke Co. of America, 254 U. S. 143, 41 Sup. Ct. 113, 65 L. Ed. ——; Davids Co. v. Davids, 233 U. S. 461, 34 Sup. Ct. 648, 58 L. Ed. 1046; Coca-Cola Co. v. Nashville Syrup Co. (D. C.) 200 Fed. 157. And this would be true even in the absence of the stipulation in this case that "Coca-Cola" has a secondary or distinctive meaning.

[7] To adopt the contention of the defendants as to territorial limitations would be to recognize an unlawful burden upon or interference with or obstacle to interstate commerce, in contravention of the long line of authorities upon that subject which hold that such a burden is unlawful, regardless of whether it is an attempt by reason of a regulatory statute, a license tax, or the enforcement of a trade-mark registration act. The case upon which defendants rely, Hanover Star Milling Co. v. Metcalf, 240 U. S. 103, 36 Sup. Ct. 357, 60 L. Ed. 713,

is inapplicable to sustain their position as no registration of a trademark was under discussion in that case by the Supreme Court. That decision disposed of the rights of the parties as to common-law trademarks.

Defendants make the point that because the plaintiff itself does not bottle the beverages made from its syrup, but permits others to do so under supervisory bottling contracts, takes this case out of the rule with reference to adoption and user, for the reason, it is charged, that plaintiff's trade-mark is only used upon the syrup. The courts have held that the sufficiency of plaintiff's supervisory contracts over its bottlers justify the employment of plaintiff's trade-mark "Coca-Cola" on the bottled product. Coca-Cola Co. v. Deacon Brown Bottling Co. (D. C.) 200 Fed. 105; Coca-Cola Co. v. J. G. Butler (D. C.) 229 Fed. 224. In the latter case equity enjoined a bottler from using the syrup and beverage made therefrom without supervision, against the plaintiff's wishes. The court held the same in Coca-Cola Co. v. Bennett, 238 Fed. 513, 151 C. C. A. 449.

The personal and corporate defendants earnestly contend that their trade-mark is "Trico" and not a "Genuine Coca and Cola Flavor," but simply the word "Trico," which describes its syrup and the beverage made from it. This court can see no objection to a full enjoyment of the benefit of any trade-mark by the defendant if properly limited, but in equity and good conscience it should not be permitted to use a combination of the words or symbol which constitute plaintiff's trade-mark in any combination of words which will mislead the public into believing that it is getting a beverage which contains the "Coca-Cola" flavor. To permit defendants to do so would be to permit them to apply to their own use, the benefit of the stupendous sums of money which have been appropriated and expended for advertising plaintiff's goods throughout the length and breadth of the country; to cause confusion, and, in a way, to permit the public to deceive itself, to the detriment of the plaintiff, who, undoubtedly, owns the trademark and all rights concerning it, as well as the good will of the business and who is entitled to the full enjoyment of it. As the Supreme Court so recently said:

"It hardly would be too much to say that the drink characterizes the name as much as the name the drink."

The name, it must be conceded, is owned by the plaintiff.

A decree will be entered in line with these views and the facts heretofore found.