Max Levy & Company, Inc., Appellant, v. Frank Kartz, Trading as Illinois Cullet Company, not Inc., Appellee.

Gen. No. 32,773.

Opinion filed
November 19, 1928.

Joshua R. H. Potts and Helen T. West, for appellant.

Ephraim Banning, for appellee.

Mr. Justice McSurely delivered the opinion of the court.

Complainant filed its bill claiming the exclusive right to the use of the word "cullet" in connection with its

business and seeking to have the defendant enjoined from using this word in connection with his business. An answer and a replication were filed and upon hearing by the court it was ordered that the bill be dismissed for want of equity. Complainant appeals.

There is little controversy as to the facts. Sometime before January 1, 1895, Max Levy started his jobbing and brokerage business in broken glass and adopted the word "cullet" to describe this commodity. This word was used on his letterheads, on trucks and signs and on labels or shipping tags. December 9, 1913, he registered the word "cullet" as a trade-mark for broken glass in the United States Patent Office under the 10-year proviso of the Federal Trade-Mark Act of February 20, 1905. About January 13, 1917, the complainant was incorporated under the laws of Illinois and Levy transferred to the corporation all his interest in the business, together with the trade-mark and good will. The word "cullet" has been used and advertised in connection with complainant's business, which has become large. The word was registered with the Secretary of State for Illinois on November 3, 1926.

In 1916 or 1917 one John Hessler started in business in Chicago buying and selling broken glass under the name of Illinois Cullet Company, not Inc. Complainant notified Hessler of its claim to the exclusive use of the word "cullet." No suit, however, was brought seeking to restrain Hessler from using this name and he continued to do so. In 1924 the defendant Kartz took over the business of Hessler and has continued doing business under the name of Illinois Cullet Company, not Inc., since that time. Defendant uses the name Illinois Cullet Company on his signs, trucks and letterheads. It also appears in the classified telephone directory under the heading "Cullet, Jobbers and Brokers," as also appears complainant's name under the same heading.

There is no evidence that the defendant ever used the word "cullet" as a trade-mark or that the word was ever displayed in a similar manner to that employed by the complainant. The issue centers upon the use of the word "cullet." Defendant asserts that "cullet" is a generic word or a word merely descriptive of broken glass, and hence cannot be employed by any one as a trade-mark and that no one can acquire the right to the exclusive use of it.

There was a mass of evidence tending to show that the word "cullet," meaning broken glass, was and has been in general use in the trade for a considerable length of time. In a list of dictionaries, beginning with Knights Mechanical Dictionary of 1880, the word "cullet" appears and is defined as broken or refuse glass for remelting. In a number of printed publications beginning in 1866 and continuously thereafter the word appears to describe broken glass; also in a number of advertisements in trade periodicals. For instance, in the National Glass Budget published in May, 1897, is an advertisement of another concern using the word "cullet." This advertisement with the use of this word was reproduced weekly throughout 1897 and a portion of 1898. Again, in the same trade journal of July, 1902, a St. Louis concern advertised itself as dealing in "cullet." This advertisement was reproduced some 16 times in the years 1902 and 1903 in this trade journal. In this same journal is also a "cullet" advertisement by the complainant. In the Chicago business directory of 1903 defendant's business was listed under the head of "cullet" as were others in the same line of business. This word to designate this line of business seems to have been in general use continuously over a long period of time. The American Glass Review of January 15, 1927, contains advertisements under the heading of "cullet," under which is listed a concern of St. Louis and also the complainant. To detail all the places in which the

word "cullet" is used as a descriptive term to indicate broken glass or refuse glass for remelting would unduly extend this opinion. Although there was negative testimony of certain witnesses who said they had never heard the word, yet in view of the great amount of documentary evidence adduced, it was clearly established that the word "cullet" is a generic or descriptive word.

As a general proposition, a generic name, or one merely descriptive of an article of trade, cannot be employed as a trade-mark and the exclusive use of it be entitled to legal protection. *Canal Co. v. Clark*, 13 Wall. (80 U. S.) 311. As was said in *Trinidad Asphalt Mfg. Co. v. Standard Paint Co.*, 163 Fed. 977:

"All must submit to the competition which comes alone from the fair and truthful employment of generic names and terms descriptive of the qualities and characteristics of articles of trade and commerce, unaccompanied by other acts designed to induce confusion and error in the mind of the public."

Complainant does not claim that the word "cullet" was used deceptively or that the defendant imitated complainant's use of it. The true name and description of goods may be used and such use will not be enjoined. 38 Cyc. pp. 801, 824; *Florence Mfg. Co. v. Dowd*, 171 Fed. 122; Hopkins on Trade Marks, sec. 46, p. 94. In *Elgin Butter Co. v. Elgin Creamery Co.*, 155 Ill. 127, it was held that the use of the words "Elgin," "butter" and "creamery" could not be enjoined in the absence of any artifice to mislead dealers. In *Goodyear's India Rubber Glove Mfg. Co. v. Goodyear Rubber Co.*, 128 U. S. 598, after a thorough discussion of the principle it was held that names which were merely descriptive of a class of goods cannot be exclusively appropriated by anyone. See also *Brown Chemical Co. v. Meyer*, 139 U. S. 540.

There is some suggestion that complainant originated the spelling of the word "cullet" as used by com-

plainant and defendant, but this finds no support whatever in the record. The evidence is conclusive that the proper spelling of the word has always been c-u-l-l-e-t.

Complainant invokes the Federal registration of the word "cullet" as a trade-mark. The 10-year clause of the Trade-Mark Act of February 20, 1905, as amended, provides that one may register any mark used by the applicant "which was in actual and exclusive use as a trade mark of the applicant * * * for ten years next preceding February 20, 1905." Such registration has been held to be merely prima facie evidence of ownership, but this evidence may be contradicted in court and the apparent right of the registering party shown not to exist. *Thomas G. Carroll & Son Co. v. McIlvaine & Baldwin, Inc.*, 171 Fed. 125; *Coca-Cola Co. v. Stevenson*, 276 Fed. 1010; *Andrew Jergens Co. v. Woodbury, Inc.*, 273 Fed. 952. The evidence heretofore referred to shows conclusively that complainant did not, exclusive of others, use the word "cullet" to describe its business for 10 years prior to 1905. Under such circumstances the word could not have acquired a secondary meaning and be regarded as meaning the complainant's commodities only.

Defendant asserts that in any event complainant is not entitled to the relief sought because it has been guilty of laches. We deem the point well taken. It appears that Hessler originated defendant's business sometime in 1916 or 1917, and complainant bought cullet from him. Hessler did business under the name Illinois Cullet Company. Levy, complainant's president, testified that they did not interfere with Hessler's use of the word "cullet" in his business as he had been a good customer and was sick for quite a while; "anyway, we didn't bother him. We did not bring suit nor did we bother him in any way, except to serve him with notice on two occasions, I believe." Hessler

thereafter conducted his business as the Illinois Cullet Company until his death in 1924, when this business passed into the hands of the defendant Kartz. It was not until October, 1926, that complainant made any complaint of the use of the word "cullet" in defendant's business name. We hold that the delay of over 10 years, with knowledge on the part of complainant, without any legal interference, must be held as constituting laches by complainant in asserting any exclusive right to the use of the word. Tending to support our conclusion is the decision in *George B. Graff Co. v. H. C. Cook Co.*, 2 Fed. (2d) 938, where the delay in asserting complainant's rights was 8 years. In *Lane & Bodley Co. v. Locke,* 150 U. S. 193, acquiescence for 12 years was held to be laches. See also *Valvoline Oil Co. v. Havoline Oil Co.*, 211 Fed. 189, and *George J. Meyer Mfg. Co. v. Miller Mfg. Co.*, 24 Fed. (2d) 505, in which cases it was held that by unconscionable delay in so doing, the complainant estopped himself from asserting alleged rights.

Upon either the merits of the case or upon the ground of laches, the decree of the chancellor was right and it is affirmed.

*Affirmed.*

O'CONNOR, P. J., and MATCHETT, J., concur.